J. E. WOODMANSEE, Appellant, v. KANSAS CITY, a Municipal Corporation, and HORACE R. McMORRIS, Director of Finance.—144 S. W. (2d) 137.

Court en Banc, October 29, 1940.

*William C. Hogin* and *Warrick, Koontz & Hazard* for appellant.

*William E. Kemp, John J. Cosgrove* and *Bowersock, Fizzell & Rhodes* for defendants.

*E. A. Barbour, Jr., amicus curiae.*

GANTT. J.—Class suit by a taxpayer to restrain Kansas City and its Director of Finance from issuing and selling certain bonds. Permanent injunction was denied and the petition dismissed. Plaintiff appealed.

For seventy-five years the city owned and maintained the public market, consisting of buildings, stands and stalls, which it rented to individuals and firms for the display and sale of foods. On deciding that the market should be enlarged by the purchase of land, erection

of buildings and the modernization of the market facilities, the city enacted Ordinance No. 6102 purporting to authorize the issuance and sale of the bonds. In enacting the ordinance, it proceeded under Subsection 7 of Sec. 1, Art. I of the charter, which provides that the city shall have power as follows:

"To issue, sell, pledge or in any manner dispose of negotiable or non-negotiable interest bearing or non-interest bearing bonds or notes of the city upon the credit of the city or solely upon the security of property used in connection with any public utility or service owned or operated by the city, *or solely upon the credit of income derived therefrom,* or solely upon the proceeds of special assessments for public improvements or upon any two or more of such credits or securities." (Italics ours.)

The bonds in question are not authorized by the qualified voters of the city. Even so, the city contends that the ordinance and bonds are valid under said Subsection 7, which authorizes the issuance of bonds "solely upon the credit of income derived" from "any public utility or service owned or operated by the city."

I. Plaintiff contends that the bonds are invalid for the reason there was no necessity for the enlargement and improvement of the market.

On the evidence the trial court correctly ruled that the growth of the city and the increased area served by the city made it necessary to enlarge and modernize the market in order to adequately serve the public.

II. Plaintiff also contends that the maintenance of a public market is not for a public purpose.

The Legislature takes issue with the plaintiff on this question. In 1891 (Laws of Mo. 1891, p. 66) it enacted Sec. 7572, R. S. 1929, which follows:

"It shall be the duty of the mayor and municipal assembly or council in all cities of three hundred thousand inhabitants or over, or which may hereafter attain a population of three hundred thousand or over, to establish and locate a market for the sale, at wholesale or retail, of fruits, vegetables and other farm or dairy products."

Furthermore, subsection 17 of Sec. 1, Art. I of the charter authorizes the maintenance of public markets. Furthermore, the rule announced by textwriters and decisions of this court do not agree with plaintiff that a city market is not for a public purpose. [2 Dillon on Municipal Corporations (5 Ed.), secs. 699, 700, 701; McQuillin on Municipal Corporations (2 Ed.), sec. 1063; City v. Jackson, 25 Mo. 37; City v. Weber, 44 Mo. 547; Halbruegger v. City of St. Louis, 302 Mo. 573. 262 S. W. 379; Dysart v. City of St. Louis, 321 Mo. 514. 11 S. W. (2d) 1045: State ex rel. Excelsior Springs v. Smith, 336 Mo. 1104, 82 S. W. (2d) 37.]

Plaintiff cites State ex rel. Kansas City v. O'Rear, 277 Mo. 303, 210 S. W. 392. In that case "we ruled that absent a scarcity of ice affecting the public health, the city was not authorized to engage in the manufacture and sale of said commodity." Clearly the case is without application.

It is idle to contend that the maintenance of a public market is not for a public purpose.

III. Plaintiff also contends that the city market is not a "public utility or service" within the meaning of subsection 7, Sec. 1, Art. I of the charter, which authorizes the city to issue bonds "solely upon the credit of income derived" from "any public utility or service owned or operated by the city."

The city market is not a public utility within the meaning of the Public Service Commission law. [Subsection 25, Sec. 5122, R. S. 1929.] Even so, it is a public service and in that sense it is a public utility within the meaning of said Subsection 7. [State ex rel. Chandler v. Jackson, 121 Ohio St. 186, 167 N. E. 396; Denton v. City of Sapulpa, 78 Okla. 178, 189 Pac. 532; Derr v. City of Fairview, 121 Okla. 23, 247 Pac. 45; Moore v. Logan (Tex. Civ. App.), 10 S. W. (2d) 429; City of Denton v. Denton Home Ice Co. (Tex. Com. App.), 18 S. W. (2d) 606; Capen v. City of Portland, 112 Ore. 14, 228 Pac. 105; City of Belton v. Ellis (Tex. Civ. App.), 254 S. W. 1023.]

IV. Plaintiff also contends that subsection 7, Sec. 1, Art. I of the charter, which authorizes the payment of bonds solely from income derived from the utility property, should be considered with Sec. 107, Art. IV, which requires the qualified voters to endorse the issuance of the bonds. In other words, plaintiff contends that the city is without authority to issue the bonds, absent an endorsement by the qualified voters of the city. Section 107 follows:

"The city may acquire, by purchase, condemnation or construction, waterworks, gas works, electric light works, street railways, telegraph and telephone systems, heating plants, ice or refrigeration plants or any other plants, system or public service institution, within or without the limits of the city, for the use of the city or its citizens, and for the purpose of paying therefor, in whole, or in part, may issue public utilities bonds, or general liability bonds, or both, in the manner and with the effect prescribed in Section 12 of Article 10 of the Constitution of Missouri, as it now exists, or as it may hereafter be changed. The Council shall have authority, by ordinance, to prescribe and regulate the proceedings and methods of issuing public utility bonds."

Of course, Sec. 107, Art. IV of the charter must be considered with Sec. 12, Art. X of the Constitution. Defendants correctly analyze said Section 12 as follows:

1. " 'General liability bonds,' being general obligations of the

city, payable out of unlimited *ad valorem* taxes, and to be issued only when authorized by a two-thirds vote of the electors voting on the proposition. The bonds of Kansas City in issue in this case are not of this character.

2. " 'Public utilities bonds,' payable out of the earnings of the utility, *but having two attributes not possessed by the Public Market Revenue Bonds now in controversy.* Under Section 12, Article X of the Constitution, if a city issues its utilities bonds as aforesaid, the city is authorized, in addition to paying such bonds out of the revenue from the utility, to provide by ordinance for the payment in any year of any part of the principal or interest of said utilities bonds due in that year, *'out of the general* revenue of that year raised by general taxation.' Furthermore, said Section 12 of Article X of the Constitution provides that such city shall have power *to execute its mortgage on such utility* to secure the payment of such utilities bonds, and contains detailed provisions for the appointment of a receiver of the utility property and for the foreclosure of such mortgage. *Following the provisions aforesaid* and in the same sentence that authorizes the foreclosure of the mortgage on the utility in the event of default, there is a final proviso that such city shall not issue any *such* public utilities bonds without the assent of four-sevenths of the voters thereof, voting on the proposition."

Thus it appears that under Sec. 107, Art. IV of the charter, and Sec. 12 of Art. X of the Constitution, a city of the designated population must have the assent of four-sevenths of its qualified voters to the issuance of bonds for the purpose of acquiring public utility property. It also appears from said section of the charter and said section of the Constitution that the bonds may be paid from revenue raised by taxation; that the city may execute a mortgage on the utility property to secure the payment of the bonds, and that on default a receiver may be appointed to take charge of the utility property pending foreclosure of the mortgage.

On the contrary bonds authorized by subsection 7, Sec. 1, Art. I are not paid from funds raised by taxation. Furthermore, the payment of the bonds is not secured by a mortgage on utility property. They are payable solely from revenue derived from the operation of the public utility. There is no connection between said subsection 7 and said Sec. 107. They are independent sections and provide for different methods of payment. The endorsement of the qualified voters is not necessary to the validity of the bonds issued under subsection 7.

V. Plaintiff also contends that the bonds under consideration constitute an indebtedness within the meaning of Sec. 12, Art. X of the Constitution. We do not think so.

The ordinance authorizing the bonds expressly provides that no taxes shall be levied to pay the bonds or any obligations of the city contained

in the ordinance. Furthermore, we have ruled to the contrary in cases as follows: Bell v. City of Fayette, 325 Mo. 75, 28 S. W. (2d) 356; State ex rel. City of Hannibal v. Smith, 335 Mo. 825, 74 S. W. (2d) 367; State ex rel. Excelsior Springs v. Smith, 336 Mo. 1104, 82 S. W. (2d) 37; Grossman v. Public Water Supply District No. 1 of Clay County, 339 Mo. 344, 96 S. W. (2d) 701.

VI. Plaintiff also contends that the use of the income from the enlarged and modernized utility property to pay the bonds is an illegal diversion of that part of the income from the utility property as it existed before the enlargement and modernization.

In Grossman v. Public Water Supply District, 339 Mo. 344, 96 S. W. (2d) 701, we considered all of the authorities on the question and overruled this contention.

VII. Plaintiff also contends that subsection D, Sec. 6, of the ordinance violates Sec. 12, Art. X of the Constitution for the reason it provides that if the revenue derived from the market as enlarged is insufficient to pay for operation and repairs and also pay the bonds with interest when due, then the city will pay for operation and repairs from sources other than income derived from the market.

The identical question was considered in State ex rel. City of Hannibal v. Smith, 335 Mo. 825, 74 S. W. (2d) 367. In that case we ruled that said liability was contingent and for that reason is not a debt within the meaning of said section of the Constitution.

VIII. Plaintiff also contends that Secs. 6 and 7 of the ordinance conflict with Sec. 41, Art. III and Secs. 86 and 87, Art. IV of the charter.

Said sections of the charter provide for the management and control of the finances of the market, the annual budget and the annual appropriation ordinance based on the annual budget. We have considered said sections of the ordinance with said sections of the charter and find no conflict. The ordinance was drawn with reference to said provisions of the charter.

The judgment should be affirmed. It is so ordered. All concur.