EUGENE M. DODDS, Intervener-Appellant, v. KANSAS CITY.—152 S. W. (2d) 128.

Court en Banc, June 10, 1941.

*Borders, Wimmell, McCreight & Brous* and *James B. McDonough, Jr.,* for intervener.

*William E. Kemp, Benjamin M. Powers* and *Bowersock, Fizzell & Rhodes* for respondent.

TIPTON, J.—Pursuant to the provisions of Sections 3312 to 3317, R. S. Mo. 1939, the respondent filed a petition in the Circuit Court of Jackson County, Missouri, for the purpose of procuring a *pro forma* decree adjudicating the validity of $1,000,000 of Kansas City Water Revenue Bonds, Series A. The appellant intervened in this action. The trial court entered a decree upholding the validity of these bonds. From that decree the appellant has duly appealed.

On July 1, 1922, Kansas City issued $11,000,000 of water works bonds, Fourth Issue, which are general obligation bonds duly au-

thorized by a two-thirds vote of the qualified voters at a bond election held April 4, 1922. The bonds are payable July 1, 1942, but the respondent has not the money, nor will it have the money, to meet its obligation on these bonds. To take advantage of the prevailing low rate of interest, the respondent on December 2, 1940, passed Ordinance No. 6351, providing for the issuance of $10,000,000 Water Works Refunding Bonds, Series B. These bonds are issued pursuant to Section 3279, R. S. Mo. 1939, and are general obligation bonds of respondent. At the same date, the respondent enacted Ordinance Number 6349, which authorized the issuance of $1,000,000 Water Revenue Bonds, Series A, so that the $11,000,000 water works bonds due July 1, 1942, could be paid. This ordinance provided, among other things, that both principal and interest of these Series A bonds would be payable only out of the net revenue of the respondent's waterworks. It also provided that the interest on all waterworks bonds would be paid out of the net revenue of the waterworks, but, in event the net revenue of the water works was insufficient to do so, then the interest and the sinking fund due each year on the Series A or the revenue bonds would have a prior lien on the net revenue of waterworks for that year.

Subsection (7), Section 1, Article I of the present Charter of Kansas City provides that that city shall have the power, "(7) To issue, sell, pledge . . . negotiable or non-negotiable . . . bonds . . . solely upon the credit of income derived therefrom, . . ." (that is, from the income of any public utility).

The appellant admits that, according to our decision in the recent case of Woodmansee v. Kansas City, 346 Mo. 919, 144 S. W. (2d) 137, there is no doubt that the respondent has the power to issue waterworks revenue bonds payable solely out of the revenue derived from that public utility, but contends that the part of the ordinance which would give these bonds a prior lien on the net revenue over general obligation water works bonds is void because it violates Section 48, Article III of the City Charter which reads:

"Sec. 48. RATES. It shall be the duty of the Council by ordinance, upon recommendation of the Director of the Water Department, from time to time, to fix, establish and alter prices and rates to be paid for the use of water. Water rates shall be so fixed as will produce at least sufficient revenue to pay all operating expenses, the interest on all bonds, issued and outstanding, for water works purposes, all maintenance and repair charges, and all costs due to obsolescence or other causes. All revenue and income derived from the waterworks, after paying all operating expenses, all maintenance and repair charges, and all costs due to obsolescence or other causes shall be first applied to payment of interest on bonds, outstanding for waterworks purposes, in so far as may be necessary, and the balance thereof shall go to a sinking fund which shall be established to

meet the principal of said bonds, or for enlargements, extensions and betterments as the Council may by ordinance provide.''

Appellant contends that the proper construction of this section is that such revenues must be used equally and proportionately to pay all of the waterworks bonds of respondent, whether the same be purely revenue bonds or general obligation bonds supported by an unlimited tax levy on all property situated in Kansas City. On the other hand, the respondent contends that such a construction would in effect destroy the right of respondent to issue revenue bonds under Subsection (7), Section 1, Article I of the Charter, because if the revenue bonds do not constitute a first claim on the net revenues of the respondent's utility against which such bonds are issued, then such revenue bonds would be of little value and would be practically unmarketable.

Section 48 is one of several sections of the Charter dealing with the administration of the city's water department. The manifest purpose of this section is to regulate the operation of the water department and to require that such operation be conducted on a businesslike basis, with rates adequate to pay all operating expenses and the ''interest on bonds, outstanding for water works purposes, in so far as may be necessary,'' and the balance shall go into a sinking fund, thus prohibiting any diversion of the revenues of the water department to any other municipal purposes. This section does not undertake to say what bonds shall have priority, if the revenue is insufficient to pay the interest on all water works bonds. In other words, this section is silent as to whether revenue bonds or general obligation water works bonds shall have priority.

However, Subsection (7), Section 1, Article I specifically authorizes the respondent to issue revenue bonds, payable only out of the net revenue of the utility. The respondent therefore, impliedly has the power to make the net revenue from the utility, or in this instance the water works, a prior lien to pay interest and principal on its revenue bonds. Unless the city had this power, the bonds would be practically worthless and of very little market value. A municipality has not only the powers granted in express words but also those necessarily or fairly implied in, or incident to, the powers expressly granted. [State ex rel. City of Columbia v. Allen, 183 Mo. 283, 82 S. W. 103; Taylor v. Dimmitt, 336 Mo. 330, 78 S. W. (2d) 841.] We hold that the provisions of Ordinance No. 6349 do not violate Section 48 of the Charter.

The appellant contends that Ordinance No. 6349 would deprive the holder of the water works bonds, Fourth Issue, of their property without due process of law. The Fourth Issue Bonds were dated July 1, 1922, and at that time the respondent city was being operated under the 1908 Charter. Section 9, Article XI of that

Charter is practically the same as Section 48, Article III of the present Charter. The only bonds issued under the 1908 Charter are the $11,000,000 general obligation bonds sought to be refunded. The record shows that neither Ordinance 42,761 authorizing the Fourth Issue Bonds, nor the proceedings thereunder, nor the proposition submitted to the voters and approved by them even so much as mentioned the revenues of the water works. The proposal itself stated that the Fourth Issue Bonds were to be "other than public utility bonds." They were general obligation bonds that were to be paid by taxes raised by the respondent. The buyers of these bonds understood that they were to be paid by taxes levied by respondent, as did the voters. Clearly, such cases as George v. City of Asheville, 80 Fed. (2d) 50, and Fazende v. City of Houston, 34 Fed. 95, relied upon by appellant are not in point, because in those cases the revenue was specifically pledged as security for the bonds. This point is without substance and is overruled.

 The appellant next contends that the water revenue bonds of respondent sought to be issued will constitute indebtedness of the city within the meaning of that term as used in Section 12, Article X, of the Missouri Constitution. He bases his contention on the fact that respondent may sell and deliver such revenue bonds without such bonds being authorized by the voters and without requiring the surrender and cancellation of an equal principal amount of the outstanding bonds being refunded.

The bonds in question are purely revenue bonds and it is specifically provided they shall not be paid by any levy of taxes. The appellant has already admitted in his brief that the respondent has power to issue such bonds without a vote of the people under Subsection (7), Section 1, Article I of the present Charter. If we correctly understand the exact question appellant raises, it is that the bonds in question may be issued before an equal amount of the bonds of the Fourth Issue is cancelled, thereby increasing the respondent's indebtedness without vote of the qualified voters of the city.

Section 4 of Ordinance No. 6349 provides that the proceeds of the sale of these bonds will be held by the respondent in a separate fund and be used and applied for the sole purpose of paying an equal principal amount of the outstanding water works bond, Fourth Issue, maturing July 1, 1942.

If the obligation to pay the city "indebtedness" is not payable in whole or in part from taxation, then Section 12, Article X of our State Constitution is not violated. Bonds payable solely from the revenue of a municipal utility do not come within this provision of our Constitution. [Bell v. City of Fayette, 325 Mo. 75, 28 S. W. (2d) 356; State ex rel. City of Hannibal v. Smith, 335 Mo. 825, 74 S. W. (2d) 367; State ex rel. Excelsior Springs v. Smith, 336 Mo. 1104, 82 S. W. (2d) 37; Grossman v. Public Water Supply District No. 1

1200

of Clay County, 339 Mo. 344, 96 S. W. (2d) 701; Woodmansee v. Kansas City, 346 Mo. 919, 144 S. W. (2d) 137.]

Under the facts as presented by this record, we do not find any increase in respondent's indebtedness in violation of Section 12, Article X of our State Constitution.

The appellant also contends that the city does not have power to issue the water revenue bonds for the purpose of refunding any part of the general obligation bonds, Fourth Issue.

As already stated, the bonds in question were issued under Subsection (7), Section 1, Article I of the Charter. This section contains a general unrestricted grant of power to respondent to issue its "negotiable or non-negotiable" bonds or notes "upon the credit of income derived" from any municipal public utility or service. No further details are prescribed.

Subsections (61), (62), and (63) of Section 1, Article I of the Charter expressly authorize the Council to pass all needful ordinances for promoting the general interest and welfare, to exercise all powers granted to the city, and to enact all ordinances necessary or convenient "to the full and complete exercise of all powers in this Charter enumerated." Thus we see that the City Council has full power by ordinance to fix all the details of the revenue bonds authorized by Subsection (7).

Moreover, the rule is firmly established that where there is an express grant to a city without the method or details of exercising such power prescribed, the City Council has authority to exercise the power granted it in any reasonable and proper manner. [State ex rel. City of Memphis v. Hackman, 273 Mo. 670, 202 S. W. 7.]

Since Subsection (7) does not recite the purpose for which revenue bonds may be issued, we hold that issuance of such bonds for the purpose of providing funds to redeem and retire outstanding general obligation water works bonds maturing in the near future is a reasonable and proper exercise of the power granted respondent. [State ex rel. Gilpin v. Smith, 339 Mo. 194, 96 S. W. (2d) 40.]

Section 12, Article X of our State Constitution deals solely with general obligation bonds and provides that they shall be paid within twenty years. The bonds in question are solely revenue bonds, and not governed by that section of our Constitution. Therefore, the provision in Ordinance No. 6349 providing that these bonds may mature serially over a period of twenty-five years, and may be callable at 103 at the option of the respondent, does not conflict with the above constitutional provision.

From what we have said it follows the decree of the Circuit Court should be affirmed. It is so ordered. All concur.