In the Matter of the Petition of the City of Springfield, Missouri, a Municipal Corporation, for a Pro Forma Decree Authorizing the Issuance of $6,750,000 Principal Amount of Public Utility Revenue Bonds, Series A, of said City. CITY OF SPRINGFIELD, MISSOURI, PETITIONER, Appellant, v. HARRY MONDAY, W. E. FREEMAN, JOE E. KEET and C. A. RALSTON, Interveners.—No. 39356.—185 S. W. (2d) 788.

Court en Banc, February 7, 1945.

Rehearing Denied, March 5, 1945.

*Alfred Page, Ted Beezley,* and *Robert B. Fizzell* for appellant; *Farrington & Curtis, Dan M. Nee, Barbour, McDavid & Barbour, A. P. Stone, Jr.,* and *Stinson, Mag, Thomson, McEvers & Fizzell* of counsel.

*John H. Fairman* for respondent C. A. Ralston.

*Arch A. Johnson, Arthur W. Allen* and *W. D. Tatlow* for interveners and respondents.

986

 HYDE, J.—This is a proceeding under Sections 3312-3316 (R. S. 1939) Mo. Stat. Ann. to obtain a pro forma decree authorizing the issuance and declaring the validity of $6,750,000.00 of Public Utility Revenue Bonds of the City. The bonds were to be issued for the purchase of an electric light, gas, heating and transportation system. Several taxpayers intervened to contest the validity of the bonds. The Court entered judgment declaring the bonds invalid and enjoined issuance. The City has appealed.

The trial court's view was that these bonds could not be issued by the City unless authorized by a majority of the voters voting at an election in accordance with Section 7809. (This and all other references are to R. S. 1939 and Mo. Stat. Ann.) Respondents also contend that, under Section 12, Article 10 of the Constitution, the City has no power to issue these bonds even with such a vote.

The City entered into a contract (authorized by ordinance), in September 1944, to acquire the properties of the Springfield Gas and Electric Company (a Missouri corporation hereinafter called Gas and Electric) by purchasing all of its common stock from the Federal Light & Traction Company. (Hereinafter referred to as Federal.) The contract was dependent upon the bonds being declared valid and funds being obtained thereon within a definite time which could be extended by consent of both parties. The contract required Federal to pay all premiums and expenses for retiring the preferred stock of Gas and Electric (Par $1,128,600.00 callable at 115) and paying its outstanding bonds. ($4,014,000.00 callable at 102.) Federal was also required to pay any excess of current liabilities over current assets, to discharge its tax liability and to assume all other liabilities fixed or contingent.

The ordinance authorizing the bonds provided that the sole purpose of the contract was to acquire the Gas and Electric properties at the lowest cost to the city; that the city would not operate the company; but that it would "immediately upon the delivery of the stock of such Company to the City, and simultaneously therewith, cause said Company to be dissolved and all of its utility properties to be conveyed and transferred immediately to the City to be owned and operated exclusively by the City." The ordinance further provided that the "bonds shall be payable only from the income derived from and the property used in connection with the electric, gas and bus transportation systems to be purchased and acquired by said City upon and after the purchase and acquisition thereof by said City, said bonds to be issued and delivered at the time of the purchase and acquisition of such utilities. Neither said bonds nor the interest thereon shall be payable in whole or in part out of funds raised by taxation." The bonds themselves (set out in full in the ordinance) so provided and each further stated: "This bond shall not be or constitute a general obligation of the City of Springfield, Mis-

souri, nor shall it constitute an indebtedness of such City within the meaning of any constitutional or statutory limitation."

The ordinance further provided that the City "will fix, establish and collect such rates, fees or charges for the use of electric, gas and bus transportation service furnished by or through the electric, gas and bus transportation systems of such City, including all improvement, extensions and betterments thereto hereafter constructed or acquired by such City, as will produce revenues sufficient to provide funds to pay the operating expenses of said systems and all maintenance and repair charges and the interest on and principal of said Public Utility Revenue Bonds." The ordinance also reserved the right to sell the Gas and Bus Systems and to pay the purchase price on the principal of the bonds.

■ The contention, that Section 12, Article 10 of the Constitution prohibits a city of less than 75,000 people from issuing such revenue bonds as these, cannot be sustained. (Springfield is a city of the second class with a 1940 population of 61,238.) We considered this contention in City of Lebanon v. Schneider, 349 Mo. 712, 163 S. W. (2d) 588 as follows: "In Woodmansee v. Kansas City, 346 Mo. 919, 144 S. W. (2d) 137, the point was, in effect, decided. There Kansas City sought to issue revenue bonds to enlarge and improve its public market. While Kansas City has a population of many times 75,000 it did not proceed under the provisions of said Section 12 of Article X, but under its charter without the four-sevenths vote required by the constitutional provision. We sustained the bonds, saying that Section 12 of Article X had no application. We pointed out that revenue bonds voted and issued under said Section 12 of Article X, by cities of 75,000 or over, have two attributes not possessed by other revenue bonds, namely, (1) the city may provide by ordinance for paying the principal or interest due in any year out of general revenue of that year raised by taxation, and (2) the city has power to execute a mortgage on the utility to secure the payment of the revenue bonds. Again, in Dodds v. Kansas City, 347 Mo. 1193, 152 S. W. (2d) 128, we sustained an issue of water revenue bonds by Kansas City, although it is apparent that such bonds were not voted in accordance with said Section 12, and did not have the attributes of revenue bonds authorized by that section of the Constitution. For the same reasons, the bonds in the instant case are not of the same type as those authorized by said section. So, the fact that the Constitution authorizes cities of 75,000 or more inhabitants to issue revenue bonds of a certain type does not impliedly prohibit cities of less population from issuing revenue bonds of a distinctly different type where, as here, they are issued under the express terms of a statute." These bonds clearly are not such bonds as are authorized by Section 12, Article 10 of the Constitution. We, therefore, hold these revenue

bonds are not prohibited by this Constitutional provision concerning cities of 75,000.

Another contention against the validity of these bonds is that they constitute an indebtedness within Section 12, Article 10 of the Constitution so that they would require a two-thirds vote. Respondents say that the ordinance authorizing them does provide for use of general revenue raised by taxation to make payments on them. They base this on the following provision of the ordinance. ''None of the facilities or services afforded by the electric, gas or bus transportation systems of the City will be furnished to any user (excepting the City itself) without a reasonable charge being made therefor. In the event that the revenues derived by the City from its electric, gas and bus transportation systems shall at any time prove insufficient to pay the operating expenses of said systems and all maintenance and repair charges and also to pay all interest on and principal of the Public Utility Revenue Bonds, Series A, of the City herein authorized as and when the same become due, then the City will thereafter pay into the Public Utilities Operating Fund hereinbefore created a fair and reasonable payment for all electric, gas and bus transportation service or facilities furnished said City or any of its departments by the electric, gas, or bus transportation systems of said City, including all improvements, extensions and betterments thereto, and such payments will continue so long as the same may be necessary in order to prevent any default in the payment of the interest on or principal of the Public Utility Revenue Bonds, Series A, of the City herein authorized.''

Respondents rely on Hight v. City of Harrisonville, 328 Mo. 549, 41 S. W. (2d) 155; State ex rel. City of Blue Springs v. McWilliams, 335 Mo. 816, 74 S. W. (2d) 363; and Sager v. City of Stanberry, 336 Mo. 213, 78 S. W. (2d) 431. It is to be noted that the City is not obligated to purchase at a profit any amount of gas or electricity herein as was true in those cases. However, we also ruled this contention in the City of Lebanon case (163 S. W. (2d) l. c. 592), as follows: ''The obligation of the city to pay into the special fund the reasonable cost of water and water service used by it, in the event the income from the system shall be insufficient, is a contingent liability which may or may not come to pass. In State ex rel. City of Hannibal v. Smith, 335 Mo. 825, 74 S. W. (2d) 367, we held that such a contingent liability did not make the bonds an 'indebtedness' of the city.'' [See also 38 Am. Jur. 143, Secs. 462-464; also 38 Am. Jur. 152, Secs. 471-473.] The enforceability of this provision in the event of such contingency, if general revenue is required to make any payments, is not now before us. This provision is not in the contract of purchase and the ordinance further provides: ''It is hereby declared that the sections, subsections, sentences, clauses, and all other parts of this ordinance, whether large or small, are severable and

are not matters of mutually essential inducement; it being the purpose of the City of Springfield, Missouri, to provide funds as soon as possible for the purpose of paying the cost of purchasing and acquiring the electric, gas and bus transportation systems serving the City of Springfield, Missouri, and its inhabitants, and to do so in compliance in all respects with the Constitution and laws of the State of Missouri, and if any one or more sections, subsections, sentences, clauses or other parts of this ordinance shall for any reason be questioned in any court or shall be adjudged unconstitutional or invalid, such judgment shall not impair or invalidate the remaining provisions of this ordinance and such judgment shall be confined in its operation to the specific provision or provisions so held unconstitutional or invalid, and the same shall not be taken to affect or prejudice in any way the remaining provisions of this ordinance.'' Considering all these provisions, we hold that these bonds do not create an indebtedness within the meaning of Section 12, Article 10 of the Constitution.

However, the principal difference between respondents and the City (and the ground upon which the trial court's decision is based) is whether the 1905 Act (Laws 1905, p. 85, now Sections 7806-7827) applies and requires an election under Section 7809. The City relies on Section 6609, sub-paragraphs 7 and 37, stating the powers of Cities of the second class.

Subsection 7, and the pertinent part of 37, state the powers of such cities as follows: ''VII. To issue bonds payable only from the income derived from, and the property used in connection with any public utility owned or operated by the city.'' ''XXXVII. To acquire by condemnation, purchase, gift, lease or otherwise, property real and personal within such city or beyond the limits thereof, and to establish, construct, maintain, add to, equip, improve, own, control, regulate, . . . gas plants, telephone systems, telegraph systems, electric light systems, electric or other heat systems, electric or other railways, ferries and transportation systems of any kind . . . and all public utilities not herein enumerated and everything required therefor; and to sell, convey and encumber the same; to sell water, gas, electric current, and all products of any public utility operated by the city and to lease to corporations or individuals, when authorized by vote of a majority of the registered voters of the city, voting at such election for the purpose of maintenance and operation and for a term not exceeding ten years, any public utility owned by the City.''

It will be noted that an election is required by subsection 37 only on the question of leasing a public utility to be operated by a corporation or individual. (As to election on bonds increasing debt see Sections 6824-6827.) However, respondents contend that the 1905 Act and subsection 7 deal with the same subject and must be con-

strued together. (The 1905 Act originally only applied to waterworks but was amended in 1919, Laws 1919, p. 602, now Section 7818, to apply "to the erection or purchase of electric light plants, gas plants, ice plants or other lighting plants.") Respondents ▉ ignore subsection 37 which gives much broader authority covering all public utilities whether already owned or to be built or purchased, and specifically naming transportation systems such as herein involved. Certainly subsections 7 and 37, being part of the same statute dealing specifically with cities of the second class, must be construed together. So construed, we think it is clear that such cities are given authority to issue bonds payable only from income derived from any public utility to be acquired, purchased, established, constructed or to add to one owned and maintained by the City; and that they are not merely limited to issuing them for improving one already owned as contended by respondents on the basis of subsection 7 alone.

Our view also is that the 1905 Act does not deal with the same kind of bonds as are authorized by Section 6609 and therefore there is no conflict between them. There are the following substantial differences between the bonds sought to be issued herein under Section 6609 and those authorized by the 1905 Act.

1—These bonds are not payable in any part whatever out of funds raised by taxation, while bonds issued under the 1905 Act are payable in part out of funds raised by taxation. Sections 7812, 7819, 7820, 7824.

2—These bonds are not secured by any mortgage or lien on the utilities or other property thereof, while the 1905 Act requires bonds issued thereunder to be secured by a lien on the utility which upon default shall be foreclosed and conveyed to the bondholders, with a franchise to operate the utility in the city for a period of 30 years. Sections 7813, 7819.

3—These bonds are not limited in term and do not have a fixed interest rate, while the 1905 Act provides that the bonds authorized thereby, "shall run for a period of 20 years and draw interest at the rate of six per cent." Section 7813.

4—These bonds may be and are issued in part to purchase a bus transportation system, while bonds bought by the 1905 Act cannot be issued for any such purpose. Section 7818.

5—These bonds may be sold on the market to the highest bidder, while the bonds sold under the 1905 Act must be delivered to the corporation selling the property to the City for the purchase price, and the majority of the bondholders of such corporation (in addition to its stockholders) must have agreed to the sale. Sections 7810, 7812.

Bonds of this character (payable out of a special fund produced by the revenue of the utility only), issued without the authorization of an election, have been upheld in Bell v. City of Fayette, 325 Mo. 75, 28 S. W. (2d) 356; State ex rel. City of Hannibal v. Smith, 335

Mo. 825, 74 S. W. (2d) 367; State ex rel. City of Excelsior Springs v. Smith, 336 Mo. 1104, 82 S. W. (2d) 37; Woodmansee v. Kansas City, 346 Mo. 919, 144 S. W. (2d) 137; State ex rel. St. Charles County v. Smith, 348 Mo. 7, 152 S. W. (2d) 1; Dodds v. Kansas City, . 347 Mo. 1193, 152 S. W. (2d) 128; Lancaster v. County of Atchison, 352 Mo. 1039, 180 S. W. (2d) 706. [See also 38 Am. Jur. 152, Secs. 471-475; 44 C. J. 1131, Sec. 4064; Annotations, 72 A. L. R. 689, 96 A. L. R. 1385, 146 A. L. R. 328.] (We note that a new provision, Sec. 27, Art. 6, of the new Constitution submitted by the 1943-1944 Constitutional Convention, will if adopted, require a 4/7 vote to authorize such bonds.) We, therefore, hold that the 1905 Act does not apply to these bonds. Respondents' further contentions that the agreed value of $6,750,000.00 is exorbitant and that the bonds are secured by agreements in the ordinance equivalent to a mortgage so that on default the bondholders would get the property are not supported by the record. Their objection that parts of the distribution lines go beyond the city limits is answered by the express authorization to go beyond the limits in subsection 37 of Section 6609. We, therefore, overrule these contentions.

■ Respondents further contend that the City cannot purchase the common stock of Gas and Electric, citing Section 6, Article 9, of the Constitution, prohibiting a city from becoming a subscriber to the capital stock of any corporation. However, it is clear that the City is not subscribing to the stock of Gas and Electric and becoming a part owner therein, but has contracted with Federal to buy all of its stock in order to become the owner of its physical utility properties and is purchasing this stock solely to acquire them. The ordinance provides for the immediate dissolution of Gas and Electric and is using this means of acquiring its properties because it can do so at much less cost in this way. This is due to Federal tax laws which would heavily tax the sale of the physical property by Gas and Electric (because of depreciation [793] taken) but would not so reach the sale of the stock. This method of acquiring title to property has been approved in other states having similar constitutional provisions. [See People ex rel. Murphy v. Kelly, 76 N. Y. 475; Long v. Mayo, 271 Ky. 192, 111 S. W. (2d) 633; Cawood v. Coleman, 294 Ky. 858, 172 S. W. (2d) 548; State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N. W. (2d) 784.] We, therefore, hold that the City has authority under Section 6609 to issue these bonds.

The decree is reversed and the cause remanded with directions to enter a decree authorizing the issuance and declaring the validity of the bonds. All concur.