**ASSOCIATED ELECTRIC COOPERATIVE, INC., Webster Electric Cooperative, Southwest Electric Cooperative, Ozark Electric Cooperative, Sho–Me Power Corporation, and Kamo Electric Cooperative, Inc., Plaintiffs–Appellants–Cross–Respondents,**

v.

**CITY OF SPRINGFIELD, Missouri, Defendant–Respondent–Cross–Appellant.**

Nos. 16423, 16458.

Missouri Court of Appeals,
Southern District,
Division One.

June 21, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 13, 1990.

Application to Transfer Denied
Sept. 11, 1990.

**518**

W. Stanley Walch, Michael J. Morris, Mike W. Bartolacci, Thompson & Mitchell, St. Louis, Eugene E. Andereck, George Johnson, Stockard, Andereck, Hauck, Sharp & Evans, Springfield, Thomas Jot Hartley, Rorschach, Pitcher, Castor & Hartley, Vinita, Okl., for plaintiffs-appellants-cross-respondents.

Mark E. Gardner, Hall, Ansley, Carmichael & Gardner, Turner White, Springfield, for defendant-respondent-cross-appellant.

PREWITT, Judge.

At issue is the geographic area within which defendant, a municipal corporation, may provide retail electrical service. Plaintiffs sought declaratory judgment, injunctive and other relief not relevant to these appeals. They contend that defendant can not provide electrical service outside its corporate limits.

Plaintiffs and defendant each sought summary judgment under Rule 74.04. The trial court denied plaintiffs' motion for summary judgment and granted "in part" defendant's motion for summary judgment. The trial court determined "that there is no just reason for delay" and entered judgment on this issue as provided in Rule 74.01(b). Plaintiffs and defendant appeal.

The court found that defendant was "legally authorized to provide retail electric service within the Springfield City limits and within the 1945 service area of the Springfield Gas and Electric Company only." The parties treat the "service area of the Springfield Gas and Electric Company" as being the area it was authorized to serve by the Missouri Public Service Commission in 1945. In that year defendant acquired the corporate stock of Springfield Gas and Electric Company.

## I. The Parties' Contentions

Plaintiffs contend that the trial court erred in concluding that Springfield can provide retail electric service outside its corporate limits. They contend that provisions of the Missouri Constitution and Statutes, and case law interpreting them, prevent a municipality from selling retail electric power outside the limits of the city. Plaintiffs also assert that the area outside the city limits prescribed by the trial court was erroneous because Springfield's city charter "only purports to authorize municipal electric service to those customers or locations outside city limits which were already served by SG & E [Springfield Gas and Electric Company] when Springfield acquired the SG & E assets in 1945".

Defendant contends that the trial court erred in limiting the area of service outside the city limits to that which Springfield Gas and Electric was authorized to serve in 1945. Defendant asserts that it can provide electrical service outside its city limits if consistent with the Missouri Constitution, statutes and its charter "and not as limited by the arbitrary boundary of the SG & E territory." Defendant also claims that by limiting its area of service outside the city limits the trial court's judgment was beyond the pleaded and submitted issue because the sole issue pleaded by plaintiffs and disputed by defendant was the propriety of Springfield's furnishing electrical service anywhere outside the city limits. Defendant's remaining contentions are that plaintiffs' action is barred by laches and that the only remedy available to limit Springfield's service in these areas would be quo warranto brought by the state.

## II. Facts

Plaintiffs Webster Electric Cooperative, Southwest Electric Cooperative, and Ozark Electric Cooperative sell to retail customers either in the area being served by defendant or within the area that these plaintiffs contend defendant intends to provide retail electric service. Plaintiff Associated Electric Cooperative, Inc. generates and transmits electricity to plaintiff Sho–Me Power Corporation and plaintiff KAMO Electric Cooperative, Inc. who sell to plaintiffs Webster Electric Cooperative, Southwest Electric Cooperative and Ozark Electric Cooperative.

The sale to defendant of the stock of Springfield Gas and Electric Company was approved by the Public Service Commission, which as a part of the order approving the sale, rescinded the certificate of convenience and necessity issued to Springfield Gas and Electric Company.[1] Defendant liquidated Springfield Gas and Electric Company and operates a utility system which includes electrical power. It provides retail electrical service within and without its corporate limits.

Since 1945 defendant has expanded that service outside its corporate limits into areas where electricity was not actually being sold in 1945 by Springfield Gas and Electric Company. It has also extended its service to one limited area which is beyond the territory which Springfield Gas and Electric Company was authorized by the Missouri Public Service Commission to serve.

Since its adoption at an election held on March 17, 1953, defendant is governed by a city charter as permitted by article VI, Section 19 of the Missouri Constitution. Article XVI of defendant's city charter provides that utilities owned or thereafter acquired by the city are to be controlled and operated by a board known as the Board of Public Utilities. A section within that article provides:

Section 16.19. Area of service.

The board of public utilities shall operate the utilities and furnish the services thereof within the corporate limits and within the area outside of such corporate limits served by any public utility now owned or hereafter acquired, at the time of such acquisition.

Nothing in this section shall be construed to prevent said board from purchasing, leasing, erecting, installing, or otherwise acquiring real and personal property necessary, useful or desirable in the conduct of its operations at any place whether within or without the corporate limits of the city.

## III. Procedural Issues

Defendant, in a combined point, contends that this action was improper because it was barred by laches and that the only remedy against its service in the area beyond its limits is "quo warranto at the hands of the state." With admirable candor defendant's attorneys admit that the quo warranto argument "wasn't pushed before the trial court" and that although its

---

1. The Report and Order of the Public Service Commission said in part:

There was a question raised at the hearing as to whether or not the City of Springfield upon acquisition could lawfully own and operate the electric and gas properties located outside the corporate limits of the City. Certain small parts of the electric and gas properties proposed to be acquired by the City of Springfield are located outside the corporate limits of the City. However, the evidence shows that the electric and gas properties located outside the City limits are relatively small in amount. The operation of these properties outside the City limits is incidental to the operation of the principal parts of the systems located inside the City. Service is supplied exclusively from the plants located in-

side the City. The entire properties both inside and outside the City are operated as a unit. We are of the opinion that under the facts and circumstances in this case that the City of Springfield can lawfully own and operate that part of the properties located outside the City limits so long as it operates the entire gas and electric properties primarily for the purpose of supplying electricity and gas for its own needs and the needs of its inhabitants and is incidentally selling surplus electricity and gas to nonresidents without impairing the usefulness of its gas and electric properties for said primary purpose. We are supported in this conclusion by the Supreme Court's holding in *Speas vs. K.C.,* 329 Mo. 184, 44 S.W. (2d) 108, and the *Springfield case,* supra [*City of Springfield v. Monday,* 353 Mo. 981, 185 S.W.2d 788 (1945)].

answer raised the issue of remedies, saying declaratory and judgment were not proper, quo warranto was not expressly mentioned. Even if, as defendant asserts, that quo warranto would be the only remaining remedy, that argument was not presented to the trial court.

■ Raising an affirmative issue in an answer does not ordinarily present it to the trial court. Defendant contends that a recent appellate decision caused it to reconsider these defenses.[2] That does not resurrect those issues. Laches is an affirmative defense, see Rule 55.08, and a showing of its existence must be presented to the trial court. The quo warranto contention should also have been raised there. By not having done so these claimed defenses are not preserved for review here. This court will not convict a lower court of error on an issue which was not presented to it. *Asarco, Inc. v. McNeill*, 750 S.W.2d 122, 129 (Mo.App.1988). Nevertheless, we gratuitously comment briefly upon these contentions.

### A. Remedy

■ It has been held that a privately owned public utility has standing to seek to enjoin a municipally owned utility from extending its utility service beyond its corporate limits into an authorized area of the complaining utility. *Missouri Public Service Co. v. City of Trenton*, 509 S.W.2d 770, 772 (Mo.App.1974); *Missouri Cities Water Co. v. City of St. Peters*, 508 S.W.2d 15, 18 (Mo.App.1974). In those cases the plaintiff utility companies were privately owned public utilities operating under a certificate of convenience and necessity in the area to which the municipal utility sought to expand. The present plaintiffs are not holders of such a certificate. Defendant, however, does not attempt to distinguish the cases on that basis but only contends that quo warranto is the only appropriate remedy to prevent a municipality from operating in an unauthorized area. Plaintiffs' standing to bring the action has

not been directly challenged in the trial court or here. Only the remedy is questioned.

We decline to distinguish these cases on the basis of the certificate of convenience and necessity when no contention was presented to us on that theory. Plaintiffs rely upon those holdings and defendant does not challenge them. Therefore, they dispose of defendant's contention that quo warranto is the only remedy to limit defendant's service outside its corporate limits. Declaratory relief could appropriately be joined with seeking an injunction.

### B. Laches

■ Defendant has been selling electricity outside the city since 1945. The record does not establish that it and one or more of the plaintiffs who sell retail electricity, have actually been in competition since that time. Plaintiffs contend that in recent years defendant has been more aggressive in its expansion and that competition between the retail plaintiffs and defendant has intensified. Laches is an equitable doctrine that unreasonable delay bars a claim if the delay is prejudicial to the defendant. *Mississippi–Fox River Drainage District No. 2 v. Plenge*, 735 S.W.2d 748, 754 (Mo. App.1987). Defendant as the party asserting laches had the burden of proof on that issue. *Joplin CMI, Inc. v. Spike's Tool and Die*, 719 S.W.2d 930, 938 (Mo.App. 1986). We conclude that this burden was not met here as unreasonable delay prejudicial to defendant was not established.

### C. Judgment Beyond the Issues

■ Plaintiffs are correct that the judgment of the trial court is limited by the claims for relief and issues in the pleadings. See *Keen v. Dismuke*, 667 S.W.2d 452, 453 (Mo.App.1984), *Carlton v. Wilson*, 618 S.W.2d 731, 732 (Mo.App.1981). However, that did not occur here.

■ In plaintiffs' petition they alleged that defendant was violating its city charter by furnishing utility service in rural

---

**2.** The decision referred to is *City of Town & Country v. Goldman*, 778 S.W.2d 300 (Mo.App. 1989). That opinion was issued on July 11, 1989. The judgment here was entered June 20, 1989. *Goldman* involved annexation. No utility questions were involved.

areas of Greene County outside the area served by Springfield Gas and Electric in 1945. In requesting relief plaintiffs asked the court for a declaratory judgment that defendant's "past, present, and threatened future practice of constructing, maintaining, and owning electric distribution and service lines and related facilities and providing retail electric service outside its city limits is unlawful and contrary to the Springfield city charter, Missouri statutes, case law and the Missouri Constitution".

Plaintiffs also sought an injunction enjoining defendant "from (1) building, owning, or extending any new electric distribution and service lines and related facilities outside its city limits, and (2) serving or agreeing to serve any new retail electric customer locations outside its city limits". In its answer defendant admitted that "it serves locations outside its city limits which were not served by SG & E in 1945" and contended that in providing that "service it has followed the mandate of its City charter."

Whether the charter limited defendant to only providing retail electric service to a particular area outside the city, the service area of Springfield Gas and Electric Company, was an issue presented to the trial court and determined by it. The trial court's determination here was within the issues raised in the pleadings and the requests for relief although it did not grant all of the relief requested by either party.

## IV.  Service Area

■ *Cape Motor Lodge v. City of Cape Girardeau*, 706 S.W.2d 208, 210 (Mo.banc 1986), held that Mo. Const. art. VI, § 19(a), set out marginally [3] "grants to a constitutional charter city all the power which the legislature could grant" provided that those powers are consistent with the constitution and not limited or denied by the

charter or statute. Id. See also J. Westbrook, *Charter Drafting Under the New Municipal Home Rule Provisions*, Mo. Mun.Rev. p. 18 (March 1973).[4] The question then presented is whether defendant's service outside the city is limited by Missouri statutes, its constitution or defendant's charter.

"Conflicts between local enactments and state law provisions are matters of statutory construction. Once a determination of conflict between a constitutional or statutory provision and a charter or ordinance provision is made, the state law provision controls." *Cape Motor Lodge*, supra 706 S.W.2d at 211. The test for determining if a conflict exists is whether the municipal enactment permits what the statute prohibits or prohibits what the statute permits. Id. See also *Yellow Freight Systems v. Mayor's Com'n*, 791 S.W.2d 382, (Mo. banc 1990); *Gates v. City of Springfield*, 744 S.W.2d 487 (Mo.App.1988); Comment, State–Local Conflicts Under the New Missouri Home Rule Amendment, 37 Mo.L. Rev. 677 (1972) (authored by Thomas N. Sterchi) (suggesting that under this constitutional section courts should invalidate city ordinances only where statutes expressly prohibit or permit a certain activity or the state has preempted an area).

### A.  Missouri Statutes

In contending that Missouri statutes and appellate decisions regarding them prohibit defendant from providing retail electric service outside the city limits, plaintiffs cite §§ 91.010–91.040, RSMo 1986. In construing those sections plaintiffs primarily rely upon *Taylor v. Dimmitt*, 336 Mo. 330, 78 S.W.2d 841 (1934), and *Missouri Public Service Co. v. City of Trenton*, 509 S.W.2d

---

**3.  Power of charter cities, how limited.** Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its

home rule powers, have all powers conferred by law. Mo. Const. art. VI, § 19(a). It was adopted October 5, 1971.

**4.** Professor Westbrook was the "principal drafter" of Mo. Const. art. VI, § 19(a). See *State ex inf. Hannah v. City of St. Charles*, 676 S.W.2d 508, 512 (Mo.banc 1984).

770 (Mo.App.1974).[5] Plaintiffs acknowledge that there is no language in those sections which expressly prohibit a city from operating outside its city limits. They contend that because such authorization is not expressly granted, by implication cities are prohibited by these sections from operating outside their corporate limits. We find no such implication in the statutes nor do the cases interpreting them aid plaintiffs.

In their brief plaintiffs state that *Taylor* is the "leading case ... on the precise question of the legality of extra-municipal retail electric service". Neither *Taylor* nor *Trenton* is controlling. Both were decisions finding no authority for the particular municipalities involved to sell outside the city limits. They do not determine that such authority might not be granted by the legislature.

Plaintiffs also cite §§ 393.130, 393.140, 393.170, RSMo 1986, and §§ 394.020, 394.-030, 394.160, RSMo 1986. They contend that "[t]aken together ... Chapters 91, 393, and 394 establish a comprehensive regulatory scheme for electric utilities, and in particular define their geographically limited authorized service areas." Plaintiffs assert that this "service area concept" was a legislative intent to restrict all providers of retail electric power to "administratively regulated service areas." They say that defendant's rapid expansion of its service area outside the city limits defies this concept.

Although we agree that there is much regulation in this area, we do not conclude that a constitutional charter city having an electric municipal utility would be regulated to the extent that it must stay within its corporate limits. Had the legislature intended this, it easily could have clearly said so. As earlier noted, Mo. Const. art. VI, § 19(a), gives such a city all the powers which the legislature could grant consistent with the constitution and not limited or denied by the charter or statute.

*Speas v. Kansas City*, 329 Mo. 184, 44 S.W.2d 108 (1931), held, that pursuant to its city charter, Kansas City could sell water to residents of Johnson and Wyandotte counties in Kansas. Plaintiffs attempt to distinguish *Speas*, asserting that its ruling was based upon a specific Missouri statute, presently § 91.050, RSMo 1986, which authorized municipalities to supply water "to persons and private corporations for use beyond the corporate limits of such city". We do not so read that opinion. It states that Kansas City did not rely upon that section and we construe the holding as finding the authority in the Kansas City charter. It could also be noted that § 91.050, RSMo 1986, is similar to § 91.020, RSMo 1986, regarding cities selling light and power. Those sections are set forth below.[6]

If Kansas City, pursuant to its charter can sell water across the state line without being in violation of Missouri statutes, we see no reason that the City of Springfield could not furnish, at least with certain limitations discussed later, electrical service outside its city limits. See also *City of Springfield v. Monday*, 353 Mo. 981, 185

---

**5.** Plaintiffs also cite *State ex rel. Mitchell v. City of Sikeston*, 555 S.W.2d 281 (Mo.banc 1977). It did not involve retail sales and any indication in it that the legislature sought to prohibit a city from selling at retail electrical power outside its limits is necessarily dicta or at least not controlling here.

**6.   91.020.   Cities empowered to sell light and power.**—Any city in this state, which owns and operates any electric light or power plant, may, and is hereby authorized and empowered to, supply electric current from its light or power plant to other municipal corporations for their use and the use of their inhabitants, and also to persons and private corporations for use beyond the corporate limits of such city, and to enter into contracts therefor for such time and upon such terms and under such rules and regulations as may be agreed upon by the contracting parties.

**91.050.   Cities owning waterworks may supply other cities.**—Any city in this state which owns and operates a system of waterworks may, and is hereby authorized and empowered to, supply water from its waterworks to other municipal corporations for their use and the use of their inhabitants, and also to persons and private corporations for use beyond the corporate limits of such city, and to enter into contracts therefor, for such time, upon such terms and under such rules and regulations as may be agreed upon by the contracting parties.

S.W.2d 788, 792 (1945) (determining that under a previous statute defendant was authorized to have distribution lines beyond the city limits).

As earlier noted, plaintiffs fail to point to any statute expressly prohibiting defendant's questioned sales and the decisions on which plaintiffs rely merely found no authorization for such sales. If there was a statute prohibiting the city of Springfield from selling electricity outside its city limits, then obviously the charter provision would be in conflict with it. But as there is none, and as *Speas* found a similar provision valid, defendant is authorized to furnish electrical power to nonresidents as long as it is consistent with the public purpose doctrine of the Missouri Constitution, except as it may be limited by its charter.

### B. Missouri Constitution

Plaintiffs' argument that service outside the city serves "no proper public purpose" and therefore violates Mo. Const. art. VI §§ 23, 25 is without merit. Plaintiffs had the burden of showing that these constitutional provisions were violated. *State ex rel. Wagner v. St. Louis County Port Authority*, 604 S.W.2d 592, 596–597 (Mo.banc 1980). What constitutes a public purpose is primarily a legislative decision which will not be overturned by the courts unless arbitrary and unreasonable. *Id.* at 596. Such a violation was not established.

As long as there is legitimate purpose in primarily serving persons who are residents, no conflict with those sections of the constitution is present. *Speas* held that the Kansas City charter provision which allowed the city to sell surplus water to Kansas residents did not conflict with the public purposes doctrine. 44 S.W.2d at 113. See also *State ex rel. Mitchell v. City of Sikeston*, 555 S.W.2d 281 (Mo.banc 1977) (allowing Sikeston to sell electrical power to eight other municipalities including Trenton). Where the utility is operated primarily for the residents of defendant,

and defendant is incidentally selling to non-residents, *Speas* and *Sikeston* hold that those sections of the constitution are not violated. It has not been established that any other purpose is present.

### C. Springfield City Charter

The next question is what, if any, limitations are in defendant's charter. In construing the charter we seek the intent of the drafters from the language used, give effect to that intent if possible, and consider the words in light of their plain and ordinary meaning. *Cook v. Pedigo*, 714 S.W.2d 949, 951–952 (Mo.App.1986); *Brooks v. Pool–Leffler*, 636 S.W.2d 113, 116 (Mo.App.1982). The provisions of a specific provision prevail over a general one. *State ex rel. City of Springfield v. Crouch*, 687 S.W.2d 639, 641 (Mo.App. 1985). Courts presume that the enacting body intended a logical result, *State ex rel. Lebeau v. Kelly*, 697 S.W.2d 312, 315 (Mo. App.1985), and favor a construction which tend to avert unreasonable and absurd results, *Matter of A— F—*, 760 S.W.2d 916, 918 (Mo.App.1988).

The parties present varying views on the effect of the charter. Plaintiffs contend that it limits service outside the city to areas which were actually being served by Springfield Gas and Electric in 1945. Defendant claims that the charter has no limitation on its service area. As earlier noted, the trial court's judgment is treated by the parties, and we interpret it likewise, as being a determination that defendant can provide retail electric service outside the city only within the area where Springfield Gas and Electric Company was authorized by the Public Service Commission to furnish such service.

#### 1. Charter Limitation of the Service Area

Section 16.19 of defendant's charter was earlier set forth but for the reader's convenience is now set forth marginally.[7] In its

---

**7.** Section 16.19. Area of Service.

The board of public utilities shall operate the utilities and furnish the services thereof within the corporate limits and within the area outside of such corporate limits served by any public

first paragraph it purports to specifically set forth the area of utility service. The second paragraph of that section was obviously inserted because the first is a limitation on the area of service and its drafters did not want that limitation to prevent the city from owning property necessary for utility operation such as lakes, power plants, electric transmission lines, gas lines and so forth outside the service area. The second paragraph says nothing about the area of service, but pertains to the location of property owned and used by defendant in operating utilities.

Defendant asserts that other sections within article XVI of the charter expand the area described in § 16.19 as they provide that the Board of Public Utilities can exercise control over any public utility now owned or operated or hereinafter acquired "and all extensions thereof", § 16.6, and state that the board can "provide for the extension and improvement of the property" of the utilities, § 16.7. However, in neither of these provisions or anywhere else, except in the first paragraph of § 16.19, is the area of service described. The reference to extension can only be interpreted as to be extensions within the area of service provided in the first paragraph of § 16.19. It is a specific provision and controls over the more general provisions elsewhere. We hold that the first paragraph of § 16.19 of defendant's charter describes and limits defendant's service area.

### 2. The Service Area Described

We are left with deciding whether the charter provision allows service outside the city within the area where power was actually being sold by Springfield Gas and Electric Company when it was acquired or within the area that it was authorized to provide service. As earlier mentioned plaintiffs contend that the charter "only purports to authorize municipal electric service to those customers or locations outside city

limits which were already served by SG & E when Springfield acquired the SG & E assets in 1945".

Springfield Gas and Electric Company had a duty to serve all in its authorized area. "The granting of a certificate of convenience and necessity is a mandate of the utility's duty to serve all persons in the franchise area it has undertaken to serve." *City of Blue Springs v. Central Development*, 684 S.W.2d 44, 51 (Mo.App.1984). See also 64 Am.Jur.2d Public Utilities § 16 (1972). This rule does not apply now as the certificate was revoked and did not and could not apply to defendant, but it indicates the area Springfield Gas and Electric Company was serving was the entire area of authorization, not just where its lines were.

Limiting the city to the area or persons actually served could lead to unreasonable results. Consider, for example, that two houses outside the city are fifty feet apart and one was receiving service by Springfield Gas and Electric in 1945. The other one was built in early 1946. If defendant was limited to those actually served, the inhabitants of the newest home might have to seek service from another utility whose lines are a considerable distance away. Many such other scenarios could be imagined. In addition, there might not be a proper return on the cost of distribution lines, particularly in a newly developed or expanding area if additional service could not be furnished off of those lines or expansion allowed. Many cities in growing areas are expanding their geographical boundaries. The record reflects that a considerable area previously outside the city within the authority of Springfield Gas and Electric Company has been annexed by defendant. It is logical to assume that the drafters of defendant's charter not only intended that its inhabitants be served by defendant, but also many persons in areas where annexation could reasonably be anticipated. The trial court's interpretation of the charter was correct.

utility now owned or hereafter acquired, at the time of such acquisition.

Nothing in this section shall be construed to prevent said board from purchasing, leasing, erecting, installing, or otherwise acquiring real

and personal property necessary, useful or desirable in the conduct of its operations at any place whether within or without the corporate limits of the city.

## V. Conclusion

Although the intent of the trial court's judgment seems clear to the parties and to us, we are unable to find in the record any definitive description of the authorized area of Springfield Gas and Electric Company at the time defendant acquired its stock. Inquiry was made of counsel during oral argument to see if we had missed it in the record consisting of four volumes totalling 1,648 pages. The description of the area in the record was not then given or since provided, so apparently it is not there. There are certain drawings which reflect that this area generally is beyond the 1988 corporate limits of defendant. However, there is no way to determine where on the ground the boundary of that service area would be because there is no legal description, monuments or other aids to show where the service area actually is.

The judgment might be subject to the defect of being indefinite. See *Luna v. Grisham,* 620 S.W.2d 427, 428 (Mo.App. 1981). See also *Allen v. Smith,* 375 S.W.2d 874, 882 (Mo.App.1964) (judgment involving land should describe the land so that it could be readily located but may not be void if its location is clear to the parties). However, this is an appeal of less than all the issues and the matter necessarily must be remanded to the trial court for further proceedings. As the parties indicate that the service area can be precisely located, we presume that if the parties are not able to agree upon the service area of Springfield Gas and Electric Company in 1945 so that the trial court can include that in its judgment, then the trial court will determine that area with specificity even to the extent of directing a survey of all or part of the area if necessary. See *Wills v. Meador,* 638 S.W.2d 297, 298 (Mo.App. 1982).

The judgment is affirmed and the cause remanded for further proceedings consistent with this opinion.

CROW, P.J., and PARRISH, J., concur.