JOHN H. SPEAS and THOMAS J. CLARK, Appellants, v. KANSAS CITY and H. F. McELROY and WILLIAM F. FLEMING.—44 S. W. (2d) 108.

Division Two, December 1, 1931.

*Halbert H. McCluer* and *Wm. H. Wilson* for appellants.

*George Kingsley* and *Marcy K. Brown, Jr.,* for respondents.

HENWOOD, J.—This case comes to the writer on reassignment.

The plaintiffs, as resident taxpayers of Kansas City, Missouri, seek to have adjudged unconstitutional all provisions of said city's charter by which it and its officers and agents are authorized to supply water to non-residents, and to perpetually enjoin said city and its officers and agents from supplying water to non-residents. The circuit court sustained the defendants' demurrers to the petition, the plaintiffs declined to plead further, judgment was entered in favor of the defendants, and the plaintiffs appealed. Thus is presented for our determination the question of whether or not a cause of action is stated in the petition.

For the purposes of this opinion, it will be assumed that the defendants McElroy and Fleming are sued as city manager and director of the water department, respectively, of Kansas City, and not as individuals. The petition is very long, and it seems necessary to quote the following portions thereof:

"These plaintiffs further state that, among other things, the said charter under which Kansas City is acting, provides for and defines its powers, and that paragraphs eight and eleven of Section One of Article One of said charter, defining the powers of said city of Kansas City, are in words and figures as follows, to-wit:

" 'Sec. 8. To acquire, receive, hold, use, manage, maintain, control, improve, and to sell, lease, mortgage, pledge or otherwise dispose of property, real or personal, and any estate or interest therein, within or without the city or state, for any public or municipal use or purpose; to provide for the purchase of property levied upon

under execution or process in favor of the city; and to provide for the purchase by the city of property when sold for delinquent taxes and assessments levied or imposed under the charter of the city, and to sell and convey the same; but the sum paid by the city for any piece or parcel of property so sold on execution in favor of the city or for delinquent taxes or assessments, shall not exceed the amount of such debt, tax or assessment, and the necessary cost and expenses of the proceedings for the collection of the same.'

" 'Sec. 11. To acquire, construct, own, operate, maintain, sell, lease, mortgage, pledge, or otherwise dispose of public utilities or services or any estate or interest therein; or any other utility or service *to the city, its inhabitants or any part thereof*.'

"That the said powers so set forth in said paragraphs eight and eleven (8 and 11) set forth above, were placed in said charter, and are being acted upon by said city by virtue of such rights as may have been granted by Section Twelve (12) of Article Ten (10) of the Constitution of Missouri, which is as follows, viz.:

" 'That any city which now has or may hereafter attain a population of seventy-five thousand or more inhabitants may acquire, by purchase, condemnation or construction, waterworks, gasworks, electric light works, street railways, telegraph and telephone systems, heating plants, ice or refrigeration plants, or any other plant, system or public service institution, within or outside of the limits of such city, *for the use of the city or its citizens,* and for the purpose of paying therefor, in whole or in part, may issue public utilities bonds, which public utilities bonds shall not be included in the liabilites or indebtedness of the city limited by the prior provisions of this Section; but the total amount of such public utilities bonds to be issued by such city shall not exceed twenty per centum of the value of the taxable property in said city, to be ascertained as above specified.'

"That except for said section of the said Constitution, the defendant city would have no right to operate any public utility or waterworks system and that said city has no such right, except such as is specifically granted, to and derived by said city, therefrom, and said section does not grant any right, nor has the city any right, to operate a public utility or waterworks system except for the use of *itself and citizens,* and cannot engage in the business of selling any commodity except for said uses and has no right to furnish commodities or provide water beyond the city and state limits or for use by citizens of Johnson or any other county in the State of Kansas and that any such selling or furnishing by said city is and will be in violation of said provision of such Constitution.

"That the powers and duties of said director (the director of the water department) are set forth in Section 44, Article 3, of the Charter of Kansas City, Missouri, as follows:

" 'Section 44. Powers and Duties. The director of the water department shall be a person trained and experienced in the operation and management of public utilities. He shall have power to lay water pipes and equipment along streets, public highways, alleys or parts thereof, or other places, and to supply water and other services to the city, its inhabitants or to any person, firm or corporation within or without the corporate limits of the city, or within or without the State of Missouri under such terms and conditions as may be prescribed by ordinance. The council shall prescribe and the director of the water department shall enforce just and reasonable rules and regulations, methods and practices, governing the furnishing of water service and the collection of all charges therefor.'

"Plaintiffs further state and charge that Section 44, Article 3, of the said charter providing that the director of the water department shall have power 'to supply water and other services to the city, its inhabitants or to any person, firm or corporation within or without the corporate limits of the city, or within or without the State of Missouri under such terms and conditions as may be prescribed by Ordinance' is absolutely null, void and of no effect as to the words 'without the corporate limits of the city' and 'without the State of Missouri,' such alleged power and authority attempted to be given being in violation of the Constitution of the State of Missouri, for the reason that the Constitution of the State of Missouri grants no such right or power to the city.

"Plaintiffs further state that the defendant Kansas City, at a time or times, the date or dates of which are unknown to these plaintiffs, constructed, or had constructed, certain water mains running to and along the boundary line between the State of Missouri and Kansas where Kansas City, Missouri, adjoins Johnson County, Kansas. That said water mains connect with and constitute a part of the water mains and water supply system of Kansas City, Missouri. That these water mains have been extended into and connected with water mains located in Johnson County, Kansas, in what is known as the Mission Hills District and other residential districts adjoining Kansas City, Missouri, and were and now are being used to convey water from the mains and water supply system of defendant, Kansas City, Missouri, to the residents of said Mission Hills District, Johnson County, Kansas; all of whom are non-residents of the State of Missouri, for their use beyond the limits of said city and state. That. said defendant, Kansas City, Missouri, placed or had placed and connected with said water mains at or near the state line, five master meters to ascertain and determine the amount of water consumed from time to time by said non-residents who reside in Johnson County, Kansas. That these meters were all entered in the name and

charged to the account of one individual or corporation and were and are so carried on the books and records in the water department of the defendant, Kansas City, Missouri. That the readings taken from time to time from said master meters are consolidated into one reading and accounts were and are so entered and charged on the records of the defendant, Kansas City, Missouri, and the water department thereof. That the purchaser of said water is charged the lowest consumer rate known as a combination rate, based on the total consumption of water. That the rate charged is lower than the actual cost of production to the defendant, Kansas City, Missouri, and far below the rate charged the citizen and resident consumers of said city. Plaintiffs further state and allege the fact to be that the purchaser of this water, as is well known to defendant, retails and distributes it to the individual residents and citizens of said residential districts of Johnson County, Kansas, at a higher and more profitable rate than that paid to defendant, Kansas City, Missouri, but which rate is, however, lower than that charged to and paid by the great majority of the resident taxpaying citizens of said city of Kansas City, Missouri. That the said meters along or close to the line of Johnson County, Kansas, are part in the State of Kansas and part in the State of Missouri, but which are so located is unknown to plaintiffs, but is known to defendants.

"Plaintiffs further allege that defendant, Kansas City, Missouri, acting by and through its city manager and director of the water department, defendants herein, have been and now are selling and distributing large quantities of water to various other non-resident and non-citizen consumers the names of whom are unknown to these plaintiffs.

"Plaintiffs further state that the defendant, Kansas City, Missouri, was and is unlawfully and without any legal right whatsoever, permitting thousands of gallons of water to be conveyed daily into said Johnson County, and to other places outside the city limits, for the use of the non-residents as aforesaid. That by reason thereof, there has been and will be frequent shortages of water for the use, comfort, convenience and health of the citizens and taxpayers of Kansas City, Missouri. That defendant, Kansas City, Missouri, and the water department thereof, by reason of said facts, have at various times failed to supply and been unable to supply its citizens and taxpayers residing in the higher elevations of said city with sufficient water to meet the ordinary and proper requirements of said citizens, so that said citizens and taxpayers have been unable to procure sufficient water to supply the needs of their homes and keep them in a sanitary and healthful condition. That said defendant, Kansas City, Missouri, has issued orders forbidding the watering of lawns, gardens and flower beds in the city, threatening to arrest and

punish any citizen violating said order while in force, and that said orders have been enforced to the detriment and discomfort of said citizens, all at a time when non-resident users were enjoying unrestricted use of water supplied by the department. That during said water shortages the fire hazard with great potential loss of property to taxpayers is greatly increased.

"That the bonded indebtedness of the water department of Kansas City is approximately $13,000,000. That the taxpayers of said defendant city are obliged to pay the interest thereon, and to retire said bonds when due. That the citizens of defendant city have in years past paid millions of dollars in taxes for the installation, equipment and maintenance of the water supply system of said city. That all deficits in the water department have been, are and will be met by taxes levied upon the citizens and taxpayers of said city. That due to the inadequacy of the present system under existing conditions, defendant, Kansas City, has found it necessary to increase the water supply and has caused to be issued its bonds aggregating $11,000,000 for the construction, and installation of a new water plant. That it will be necessary to enlarge the distribution system to assure proper supply to the consumers, an act which will require the expenditure of several millions of dollars. That all of the aforementioned expenditures have been or will be met by the levying of taxes upon the citizens and taxpayers of defendant city, whose taxes have been and will be thereby greatly increased for many years in the future. That no part of said expenditures have been or will be paid by non-resident users and consumers of water as aforesaid. That said non-resident consumers are enabled to participate in and benefit from all of said large expenditures without bearing any part or share of the burdens thereof, and in many cases paying lower water rates than taxpaying citizen consumers.

"Plaintiffs further state that the defendants' acts aforesaid are prejudicial to the welfare of the citizens and taxpaying water users of said city, that said acts are an abridgment of the privileges of said citizens and an unjust discrimination against them and in favor of the non-resident water users. That said citizen taxpayers are being deprived of their property without due process of law and are being denied the equal protection of the law, all in violation of Section One (1), Article Fourteen (14), of the Constitution of the United States.

"Plaintiffs further state that all the limitations imposed upon a state by the Constitution of the United States or by its own Constitution, are binding on, and apply to, all subdivisions of the State including municipal corporations, like Kansas City, and that no state has a right to exercise any governmental functions beyond its own state limit, and that each state, under Article Ten (10) of the United

States Constitution, has a reserved power to have exclusive jurisdiction within its own borders subject only to the limitations given the General Government, and that no right has been ceded for one state to function within the borders of another state and that any attempt of one state to so act is in violation of said Article Ten (10), and that defendants to furnish water facilities in Johnson County, Kansas, are therefore violative of said article. That the charging of all the water provided for such use to one person or corporation, whose name plaintiffs are unable to give, but which is well known to defendants, is but a colorable transaction and done for the purpose of trying to conceal the true fact that the city and its officials are in truth and in fact furnishing the water for said inhabitants of Johnson County, Kansas.

"Plaintiffs further state that they have no adequate remedy at law, and that they and other taxpaying citizens will sustain irreparable injury by the acts of defendants unless defendants are restrained therefrom. That they are bringing this suit on behalf of themselves and all other taxpaying citizens desiring to join herein.

"Wherefore, the plaintiffs pray the judgment of the court as follows:

"1. That all clauses in the city charter of defendant Kansas City, Missouri, granting alleged power and authority to defendant Kansas City, its officers and agents to sell water outside the corporate limits of said city, either within or without the State of Missouri, be adjudged null and void as in violation of the Constitutions of the State of Missouri and the United States.

"2. That said defendant Kansas City, its officers and agents, be perpetually restrained and enjoined from supplying water to nonresident users located outside the State of Missouri, and for such other relief as the court may deem just and proper in law, equity and good conscience."

I. We will consider first the alleged unconstitutionality of Section 44 of Article III of Kansas City's charter, which says the director of its water department "shall have power to lay water pipes and equipments along streets, public highways, alleys or parts thereof, or other places, and to supply water and other services to the city, its inhabitants or to any person, firm or corporation within or *without* the corporate limits of the city, or within or *without* the State of Missouri, under such terms and conditions as may be prescribed by ordinance."

(a) It is alleged that Section 12 of Article X of the Constitution of Missouri authorizes a city of seventy-five thousand or more inhabitants to acquire waterworks and other public utilities "for the use of the city or its citizens" only, and that, therefore, the charter provisions which authorize Kansas City to supply water to non-residents are null and void.

The pertinent parts of said section of the Constitution read as follows:

"No county, city, town, township, school district or other political corporation or subdivision of the State shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the consent of two-thirds of the voters thereof voting on such proposition, at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last asssssment for state and county purposes, previous to the incurring of such indebtedness, except that cities having a population of seventy-five thousand inhabitants or more may, with the assent of two-thirds of the voters thereof voting on such proposition at an election to be held for that purpose, incur an indebtedness not exceeding ten per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for state and county purposes previous to the incurring of such indebtedness; . . . *Provided, further,* That any city which now has or may hereafter attain a population of seventy-five thousand or more inhabitants may acquire, by purchase, condemnation or construction, waterworks, gas works, electric light works, street railways, telegraph and telephone systems, heating plants, ice or refrigeration plants, or any other plant, system or public service institution, within or outside of the limits of such city, for *the use of the city or its citizens,* and for the purpose of paying therefor, in whole or in part, may issue public utilities bonds, which public utilities bonds shall not be included in the liabilities or indebtedness of the city limited by the prior provisions of this section; but the total amount of such public utilities bonds to be issued by such city shall not exceed twenty per centum of the value of the taxable property in said city, to be ascertained as above specified. The principal of said public utilities bonds shall not constitute an obligation of the city enforceable out of the funds raised by taxation. Such city may also issue its bonds, other than public utilities bonds, for the payment, in whole or in part, for such public utilities, and such bonds, other than public utilities bonds, shall constitute a direct obligation of the city, but

the total amount of such bonds, other than public utilities bonds, shall not exceed in the aggregate ten per centum of the taxable property therein, as hereinbefore provided, but such bonds, other than public utilities bonds, shall require. the assent of two-thirds of all the legal votes cast on that proposition.''

This section of our Constitution was intended as a limitation on the power of cities and other political subdivisions of this state to incur indebtedness, and the provision in question, which says that any city of seventy-five thousand or more inhabitants may acquire waterworks and other public utilities ''for the use of the city or its citizens,'' and, for the purpose of paying therefor, may issue public utility bonds in an amount not in excess of twenty per centum of the value of the taxable property in said city, was intended as an exception to the general limitation on municipal indebtedness, and not as a grant of power to cities of seventy-five thousand or more inhabitants to acquire waterworks and other public utilities, nor as a limitation on such power. [See cases cited in Vol. I, R. S. 1929, at pages 141 & 142.]

However, Kansas City is authorized by Sections 8 and 11 of Article I of its charter to acquire and to operate waterworks for public purposes only, and the acquisition or operation of waterworks by it for purposes other than public purposes, even though so authorized by its charter, would be in violation of Section 3 of Article X of the Constitution of Missouri, which says: ''Taxes may be levied and collected for public purposes only.'' Is the charter power of Kansas City to supply water to non-residents in conflict with its charter power to acquire and to operate waterworks for public purposes only or with the constitutional provision that taxes may be used for public purposes only? We think not, because the charter power of Kansas City to supply water to non-residents may be exercised, as was doubtless intended by the framers of its charter, for the benefit of the city and its inhabitants. In other words, if Kansas City acquired and is operating its waterworks primarily for the purpose of supplying water for its own needs and the needs of its inhabitants, and is incidentally selling surplus water to non-residents, without impairing the usefulness of its waterworks for said primary purpose, such exercise of its charter power to supply water to non-residents is not inconsistent with its charter power to acquire and to operate waterworks for public purposes only, nor with the constitutional provision that taxes may be used for public purposes only. In this conclusion, we are amply supported by rulings in other jurisdictions. [See Omaha v. Omaha Water Co., 218 U. S. 180; Pikes Peak Power Co. v. Colorado Springs, 105 Fed. 1; Mayo v. Village Fire Co., 96 Me. 539; Simon v. Parker, 190 N. Y. 19; Town of Kearny v. City of Bayonne, 90 N. J. Eq. 499; City of Hen-

derson v. Young, 119 Ky. 224; Rogers v. City of Wickliffe, 94 S. W. (Ky.) 24; Colorado Springs v. Colorado City, 42 Colo. 75; County of Larimer v. City of Ft. Collins, 68 Colo. 364; Muir v. Murray City, 55 Utah, 368; Fellows v. City of Los Angeles, 151 Cal. 52; Langdon v. Walla Walla, 112 Wash. 446.]

While Kansas City relies on its charter power to supply water to non-residents, it should be noted that, since 1899, we have had a general statute, now Section 7645, Revised Statutes 1929, which says: "Any city in this state which owns and operates a system of water-works may, and is hereby authorized and empowered, to supply water from its waterworks to other municipal corporations for their use and the use of their inhabitants, and also to persons and private corporations for use beyond the corporate limits of such city, and to enter into contracts therefor, for such time, upon such terms and under such rules and regulations as may be agreed upon by the contracting parties." And it should also be noted that, in the case of Public Service Commission v. City of Kirkwood, 319 Mo. 562, 4 S. W. (2d) 773, this court held that this statute was not repealed, by implication, by the Public Service Commission Act, and "that the Public Service Commission Act neither expressly nor impliedly authorizes or empowers the commission to require a municipality to obtain a certificate of convenience and necessity to supply water to persons and private corporations beyond its limits."

(b)   It is also alleged that the charter provisions which authorize Kansas City to supply water to residents of Kansas are in conflict with Amendment X of the Constitution of the United States, by which "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," and that, because of the powers reserved to the States, the state of Missouri cannot exercise a governmental function in the state of Kansas, nor delegate such power to Kansas City.

The power delegated to Kansas City by this state to supply water to residents of Kansas is not a governmental power, but a proprietary power which may be exercised if permitted by the laws of Kansas. For the purpose of showing such permission, and of throwing some light on Kansas City's water problems with reference to residents of Kansas, we take judicial notice of the following treaty between Kansas and Missouri, in the form of a resolution adopted by the legislatures and approved by the governors of Kansas and Missouri in 1921, and approved by the Congress of the United States in 1922:

"Whereas, The cities of Kansas City in Wyandotte County, Kansas, and of Kansas City in Jackson County, Missouri, are contiguous

and adjoining and each own and operate waterworks plants, the intake portions of which are on banks of the Missouri River in Kansas City, Kansas, and contiguous to each other; and

"Whereas, For the protection of each city ·in the event of a breakdown of its plant, a conflagration, epidemic, or other exigency, it is vitally important that its water plant have connection with and access to the facilities of the other; and it is, and has been in the past, of material benefit to each city that both contribute to a common fund in protecting the banks of the Missouri River in the vicinity of said plants and further upstream from breaking over and destroying the plants, or changing its course so as to leave the intake so far from the stream as to render it impossible to obtain an adequate flow of water therefrom; and

"Whereas, The water plants of both cities are connected at various points so that they can in the future, as they have in the past, supply each other with water, thereby preserving the health and protecting the property of each; and    .

"Whereas, The plant of the City of Kansas City, Missouri, is now, and will of necessity continue to be for a long period in the future, the only source of water supply to the City of Rosedale, in Wyandotte County, Kansas, and the maintenance of this supply is of vital importance to the health and property protection of the citizens of said municipality; and

"Whereas, The contour of the territory of each city is such that, to reach and serve certain districts, it is necessary that portions of the service mains and plants occupy or run through the territory of the other state; and

"Whereas, Kansas City, Missouri, is about to invest many millions of dollars in the betterment of its plant in the immediate future, and the City of Kansas City, Kansas, will invest in the future large sums in extending its plant; said extensions of each municipality necessitate large investments in the territory of the adjacent state, and to raise the funds for the purpose of making these investments it is vital to each city that each plant be free from assessment and taxation in the other state;

"Now, therefore, by reason of the advantages accruing to the municipalities of each state and the inhabitants thereof hereinbefore recited, and other advantages not herein enumerated, the states of Kansas and Missouri hereby enter into the following compact and agreement:

"(1) The State of Kansas, nor any county, township or municipality located within said state or any official thereof shall ever assess, levy or collect any taxes, assessments or imposts of any kind or character whatsoever on the portion of the waterworks plant of

the municipality of Kansas City, Missouri, now or hereafter located within the territory of the State of Kansas.

"(2) That the State of Missouri, nor any county, township or municipality located within said state, or any official thereof shall ever assess, levy or collect any taxes, assessments or imposts of any kind or character whatsoever on the portion of the waterworks plant of the municipality of Kansas City, Kansas, now or hereafter located within the territory of the State of Missouri.

"The right of eminent domain for the purpose of acquiring property, rights and easements for a waterworks plant, including mains, water pipe lines or extensions, or any part thereof, in either state, is hereby given and granted to each state and to Kansas City, Kansas, and Kansas City, Missouri, and may be exercised by Kansas City, Kansas, in the State of Missouri, and by Kansas City, Missouri, in the State of Kansas, for said purposes.

"To the faithful observance of this compact and agreement each state, by the adoption of this resolution, pledges its good faith."·

In the case of Langdon v. Walla Walla, supra, it appears that the city of Walla Walla, Washington, had acquired and was operating waterworks located in Oregon, which was expressly authorized by a Washington statute and expressly permitted by an Oregon statute, and touching the question of extra-territorial jurisdiction, the Supreme Court of Washington said: "The suggestion that to allow a city of this State to acquire property of the nature here in question in another state would, in effect, be an assumption of extra-territorial jurisdiction, we think, is wholly without force, in view of the fact that the city's ownership of such property situated outside its own territorial limits, whether within or without this State, is only the ownership and control over such property in the city's proprietary capacity. Such ownership does not, to our minds, suggest an assumption of extra-territorial governmental jurisdiction, either on the part of the State of Washington or of its cities, over property situated in another state."

II. Whether or not Kansas City has been exercising its charter power to supply water to non-residents within proper limitations is another question.

It is alleged that the action of the city in supplying water to non-residents has resulted and will continue to result in an inadequate supply of water for the use and protection of its inhabitants, and that the city is discriminating against its inhabitants and in favor of non-residents in water service and in water rates, in violation of Section 1 of Amendment XIV of the Constitution of the United States, which says no person shall be deprived of property without due process of law, nor denied equal protection of the laws.

198

Complaints of this character must be heard and passed on first by the Public Service Commission. The Public Service Commission Act provides that the jurisdiction, supervision, powers and duties of the commission shall extend to the service and rates of any municipally owned water plant "where such service or rates are for water to be furnished or used beyond the corporate limits of such municipality;" that complaints relating to such matters shall be heard by the commission; that the orders and decisions of the commission in such cases may be certified to the circuit court for review; and that an appeal may be taken in such cases from the judgment of the circuit court to this court. See Sections 5136, 5230, 5232, 5233, 5234 and 5237 of the Revised Statutes of 1929.

It follows from what has been said that no cause of action is stated in the petition, and that the demurrers to the petition were properly sustained.

The judgment of the circuit court is accordingly affirmed. All concur.