Action by Miami Transit Company against the Coast Cities Coaches, Inc., to restrain the exercise of a privilege granted to defendant to gather and discharge passengers on its routes within the corporate limits of the City of Miami. From a judgment for the plaintiff, defendant appeals.
Decree reversed in part and affirmed in part with directions.
The appellee, Miami Transit Company, operates a bus system in the City of Miami under a franchise from the municipality, while the appellant, Coast City Coaches, Inc., operates busses between North Miami and a terminus in the city and between Opa Locka and that terminus by authority of a certificate of public convenience and necessity from the Florida Railroad and Public Utilities Commission.
Until August 4, 1948, the appellant had kept the doors of its vehicles closed when they were traversing the streets within the city. On that day the city commission, without notice to the public, other certificate holders, or any one else, passed a resolution granting the application of the appellant to gather, as well as discharge, passengers on its routes within the corporate limits, although these routes followed certain streets served by the busses of the appellee.
The appellee filed a bill to restrain the exercise of the privilege thus granted to the appellant, and, after testimony had been taken and considered by the court, was rewarded with a permanent injunction. It was expressly provided, however, that there should be no interference with the discharge in the city of passengers who boarded the busses beyond the city limits or with taking passengers at the terminus for discharge beyond the limits. We shall advert to this provision later.
From the record it is obvious that the two parties litigant operated in separate spheres — one under the authority of the city, the other under the authority of the commission; or, to state it in the negative, appellee did not come within the jurisdiction of the commission because of the exception contained in Section 323.29, Florida Statutes 1941, and F.S.A., and appellant was not subject to the provisions of the city code providing for the issuance of a certificate of public convenience and necessity because of the exceptions in Chapter 55, art. XIII, Section 208, of that code.
We can agree with appellant that the legislature has delegated the City of Miami the right to regulate transportation within the city, but when we turn to the city charter to determine how this must be done we find, in Section 73, that "no right * * * or interest of the City of Miami * * * in and to * * * streets * * shall be sold except by authority of an ordinance passed by a recorded affirmative vote of four-fifths (4/5) of all the members elected to the commission, and under such other restrictions as may be imposed by law." Immediately following is a section providing that no ordinance leasing the right to the streets shall become effective unless approved by a majority of the qualified voters, to be determined in the procedure outlined in the law. Both these sections have been cited to us by counsel for both parties. In Chapter 55, art. XIII, Section 210 et seq., of the code there is an outline of the procedure for acquisition of a certificate of public convenience and necessity from the city for the operation of motor vehicles on the city streets.
When the appellant undertook to extend its operations in the manner we have *Page 666 
described, it attempted to emerge from the sphere controlled by the Railroad and Public Utilities Commission and become amenable to the provisions of the city charter and code, to which we have alluded. We cannot find in the record compliance with any of them. The city clerk testified that there had been no public hearing before the adoption of the resolution; that no notice was sent to certificate holders; that the action of the city was never approved by the qualified electors; and that no certificate of public convenience and necessity had ever been issued to appellant.
After a careful examination of the record and the briefs we arrive at the conclusion that the chancellor was eminently correct in holding that no authority had been granted the appellant which would justify its deviation from a course it had theretofore pursued under the certificate of the Railroad and Public Utilities Commission.
We believe one criticism of the decree is well founded. Taken literally the decree would prevent the collection of passengers at any place within the city except the downtown terminus, but would permit the company to discharge passengers anywhere in the city so long as they were taken aboard beyond the city limits. Even though appellant's busses had operated with closed doors within the city, we are not aware of such a restriction in the certificate awarded it by the Florida Railroad and Public Utilities Commission. We see no cause for the requirement that passengers be admitted only at the terminus. It seems to us reasonable that if they may be discharged anywhere on the route in the city when boarding the busses beyond the limits, they should be taken anywhere on the route for discharge beyond the limits. We think the decree should be amended to correct that apparent inconsistency.
The last question to be decided is presented by the challenge of both parties to that part of the final decree fixing the master's fee, and we are constrained to agree with them. The record, all of which is here in unabridged form, shows that but fifty-three pages of testimony were taken on two separate days. The master's report of findings covered twenty-one pages. A fee of $2,500 is entirely disproportionate to the value of the services rendered. It is our opinion that the master would be amply compensated with that fee reduced to $500.
The decree is reversed in part and affirmed in part, with directions to enter one that comports with these views.
ADAMS, C.J., and TERRELL and CHAPMAN, JJ., concur.
SEBRING, BARNS and HOBSON, JJ., dissent.