59 So.2d 52 (1952)
CITY OF MIAMI
v.
SOUTH MIAMI COACH LINES, Inc.
Supreme Court of Florida, Special Division B.
May 23, 1952.
*53 J.W. Watson, Jr., and John W. Prunty and Yonge, Whiteside & Prunty, all of Miami, for appellant.
Franks & Gordon and H.H. Eyles, all of Miami, for appellee.
HOBSON, Justice.
Appellee filed a complaint in the court below against appellant in which it prayed for a declaratory decree adjudicating its rights under certain resolutions adopted by the City Commission of the City of Miami granting unto appellee certificates of public convenience and necessity for the operation of a bus system. There was a prayer for injunctive relief. The certificates of public convenience and necessity permitted appellee to transport passengers for hire over certain streets of the City of Miami.
The original application for a certificate of public convenience and necessity was filed with the City Commission in the year 1936. Said application contained a request that appellee be permitted to pick up and discharge passengers within the corporate limits of the City of Miami when operating over and upon designated routes. The City Commission, after due notice and a public hearing, adopted a resolution in and by which the application was granted without the notation of any condition or exception in connection with appellee's request that it be allowed to pick up and discharge passengers within the City limits.
Thereafter, and until June 21, 1943, appellee operated its bus system as authorized by the resolution which the City Commission *54 had adopted. On that date appellee filed with the Commission an application for an amended certificate of public convenience and necessity for the operation of additional buses over the same routes. Again, after due notice and a hearing, the City Commission passed a resolution which granted the requested amendment.
On March 18, 1945, appellee filed with the City Commission another petition for an amendment of the certificate and again sought permission to increase the number of buses operated by it in order to adequately serve the public along its assigned routes. The City Commission, after due notice and a hearing, adopted a resolution authorizing an increase in the number of buses to be operated by appellee.
From the date of the original resolution which granted appellee's initial application for a certificate of public convenience and necessity appellee operated its buses over defined routes and took passengers aboard and let them off wholly within the City limits until shortly prior to the institution of this suit, when appellant, through its duly appointed officer, notified appellee that it should cease picking up and discharging passengers within the corporate limits of the City. Said officer advised appellee that upon its failure to cease such operation its employees would be arrested.
The prayer of the complaint is for an adjudication of appellee's rights under the aforementioned resolutions which granted unto appellee certificates of public convenience and necessity and for an injunction restraining appellant from carrying out its threat to arrest the appellee's employees.
We conceive the controlling issue in this case to be whether a bus company which in its operation intends to pick up and discharge passengers within the City of Miami is required to secure a franchise as provided in Sections 73 and 74 of the Charter of said City. These sections bear the heading "Franchise and Public Utilities" and prohibit the City Commission from passing a valid ordinance granting, renewing or leasing the right to use the streets, alleys, public grounds or buildings of the City of Miami to any private person, persons, firm or corporation unless such an ordinance be passed by a recorded affirmative vote of 4/5 of all of the members elected to the Commission and be approved by a majority of the qualified voters of the City of Miami voting at an election held for the purpose of determining whether it be the will of a majority of the qualified voters that such franchise right of user be granted.
Undoubtedly the Charter of the City of Miami authorizes said City to regulate transportation for hire within its corporate limits. However, appellant contends that it is without authority to issue certificates of public convenience and necessity which include the privilege of engaging in the business of intra-city transportation for hire because the right to the use of the streets of the City of Miami for such purpose can be lawfully authorized only by following the procedure outlined in Sections 73 and 74 of the City Charter. It is conceded that appellee does not hold a franchise issued pursuant to the terms of said sections. However, appellee entertains the view that Section 3, sub-section (hh) authorizes the City, acting through its duly elected City Commissioners, to grant a license to operate a motor bus system and that the City did grant unto it (appellee) such a license when the Commission adopted the resolutions hereinbefore delineated. Appellee insists that the adoption of the first resolution had the effect of granting unto it a license or permit to operate an intra-city transportation for hire service and that no subsequent resolution altered, suspended or revoked such privilege.
Sub-section (hh) of Section 3 of the City Charter, insofar as it is material herein, provides: "* * * to license and cause to be registered and control, tax, regulate, or to prohibit in designated streets, or parts of streets, carriages, omnibuses, motor buses, cars, wagons, drays, jitney buses or other vehicles * * *."
Pursuant to this general grant of power the City of Miami included in the City Code, which was duly adopted in 1936, Section 208 et seq., Article XIII, Chapter 55, which contain an outline of the procedure to be followed in order to secure the issuance of certificates of public convenience and necessity. As previously noted, appellant *55 insists that the certificate of public convenience and necessity issued to and held by appellee is not sufficient authorization to permit the picking up and discharging of passengers within the City and that such operation may be carried on only by a bus company which has secured a franchise as provided in Sections 73 and 74, supra.
Counsel on both sides find comfort in our opinion in the case of Coast Cities Coaches, Inc., v. Miami Transit Co., Fla., 41 So.2d 664. We do not believe the decision in that case is even helpful in connection with the question presented by this appeal. In that case the appellant, Coast Cities Coaches, Inc., had been operating an inter-city transportation for hire service under a certificate of public convenience and necessity issued by the Florida Railroad and Public Utilities Commission. It attempted to "emerge from the sphere controlled by" said Commission and become amenable to the jurisdiction of the City of Miami and conduct an intra-city transportation for hire. It attempted to comply with the provisions of the City Code (Chapter 55, Article XIII, Section 210 et seq.) relating to the issuance of certificates of public convenience and necessity. We observed that Coast Cities Coaches, Inc. had never made an attempt to secure a franchise under Sections 73 and 74 of the City Charter and that the mandatory procedure prescribed in Chapter 55, Article XIII, Section 210 et seq., of the Municipal Code was not followed; hence, the certificate was invalid. It was not necessary nor did we attempt to say that Coast Cities Coaches, Inc. should have proceeded under Sections 73 and 74, supra, rather than under Chapter 55, Article XIII, Section 210 et seq. of the City Code. We simply noted that it had neither actually nor legally pursued either course.
It is well settled that the right to use the streets of a municipality for the operation of a strictly private business can be acquired only by permit, license or franchise emanating from the City. Such use is not a usual and ordinary right but is special and unusual. The ordinary use of the streets of a municipality by a citizen is an inherent right but when use of city streets is for private gain the authority to conduct such business must be granted by municipal license, permit or franchise.
It is our duty to construe Sections 73 and 74 of the City Charter and Section 3, sub-section (hh) thereof, in such manner as to give effect to both, unless we conclude that they are so conflicting as to fail to permit the finding of separate fields of operation for them. We believe they do occupy and function in different spheres.
It is conceded that Sections 73 and 74 provide the procedure to be followed in order to secure a franchise to operate a bus system for hire over and upon the streets of Miami. We think it is equally clear that Section 3, sub-section (hh), authorizes the City to issue a license for the operation of such a bus system and to provide the procedure to be followed in order to secure such license. Moreover, we hold the view that the certificate of convenience and necessity which was issued to appellee is nothing more nor less than a license or permit.
Certain it is appellee might have applied under the provisions of Sections 73 and 74, supra, for a franchise. Had such franchise been issued it would have been for a definite period of not more than thirty years. It would have constituted a contract between the franchise holder and the City. Appellee did not solicit a franchise under the provisions of Sections 73 and 74, supra, but did seek and secure a license or a certificate of public convenience and necessity which may be altered, suspended or revoked by the Commission only upon good cause shown after "due notice has been given to the holder of said certificate and said holder has been given an opportunity to be heard."
Counsel for appellant argue that since the certificates issued to appellee did not expressly authorize the picking up and discharging of passengers within the City limits such privilege was never granted. They assert that such a right must be specifically bestowed and designated. The original application for a certificate of public convenience and necessity in apt words requested the privilege of picking up and discharging passengers within the corporate limits. We agree with the Chancellor that when the City by resolution on January 20, *56 1937, granted that application without setting forth any condition or exception with reference to the request for such privilege the effect of its action was to issue the "certificate as applied for" [See Sec. 212, Article XIII, Chapter 55, City Code of Miami] and included the right specifically sought therein to pick up and discharge passengers within the City.
Appellant points out the fact that when a subsequent application for an amended certificate was filed by appellee on June 21, 1943, for the express purpose of being permitted to increase the number of its buses, the application requested that the certificates previously issued be canceled and a new certificate issued. Said application did not refer to an intra-city operation of picking up and discharging the same passengers within the City limits. With this factual situation as their premise, counsel for appellant conclude that the privilege, assuming it was ever granted, was deliberately relinquished or at least in effect revoked by the selfinduced cancellation of the prior certificates and the issuance of a new certificate. We cannot agree with counsels' position. Once a certificate is issued it can be altered, suspended or revoked by the Commission, if good cause for such action be shown, only after due notice is given to the certificate holder and said holder has been given an opportunity to be heard. The mere voluntary cancellation of an existing certificate upon the filing of a later application for another certificate cannot be said to operate as a surrender or revocation of any right or privilege granted initially unless such application discloses a clear intent on the part of the certificate holder to abandon the rights and privileges then and theretofore existing, or facts and circumstances attendant upon such application should point unerringly to such purpose and intention. There is nothing in this record that would lead a reasonable man to the conclusion that an intention to abandon the privilege and right of intra-city transportation ever existed. Indeed, a contrary intent is inescapable. The purpose and intent of the applicant when it filed the application for a new certificate was patently to enable the licensee to continue its existing operation and at the same time better serve the traveling public by increasing its facilities. No suggestion was ever made that any other change in operation was contemplated. Moreover, we again concur in the reasoning of the able Chancellor as it is recorded in his final decree. He said:
"Acting on its initial authority, the plaintiff, operating transportation buses from South Miami into downtown Miami, has followed the practice of picking up and discharging passengers for thirteen or fourteen years. The City has been collecting taxes from the bus line measured on its manner and extent of operation in the City.
"The failure of the officials to challenge the practice during all those years (until 1950) favors the plaintiff's contention to the limited extent that an administrative construction is of weight or assistance on a matter which a Court is called upon to construe."
The foregoing observations are considered by counsel for the City as disclosing an invocation by the Chancellor of some form of estoppel against appellant. It is our belief the Chancellor merely meant to say that the certificates of public convenience and necessity were indisputably construed for a long period of time by both the City and the certificate holder as constituting a grant to the latter of the right to pick up and discharge passengers within the city limits and that since the resolution which granted the original application had the effect of bestowing upon appellee the privilege of intra-city transportation, such grant was not destroyed by the cancellation of prior certificates and the issuance of the certificate under which appellee is now operating. We do not feel the Chancellor believed or held that an estoppel would operate against the City if there had never been a lawful grant of the privilege of intra-city transportation. He simply concluded that it was proper in determining the import of the certificates to consider the construction placed upon them by both appellee and appellant, particularly in connection with the query whether it was intended and understood by both parties that the original grant of authority to pick up and discharge passengers *57 within the corporate limits of Miami should continue after the cancellation of the previously issued certificates and the issuance of the current certificate.
We are constrained to conclude that the learned Chancellor was eminently correct in holding that South Miami Coach Lines, Inc., has the right to operate its buses on specified routes and to take on and discharge passengers within the City and that the City can alter, suspend or revoke appellee's certificate, and the rights and privileges thereunto appertaining, only if good cause be shown upon a hearing, due notice of which has been given to the certificate holder.
Affirmed.
SEBRING, C.J., ROBERTS, J., and JONES, Associate Justice, concur.