DREW, Justice.
September 3, 1945, Statin Stanley filed application before the Respondent Commission for a Certificate of Public Convenience and Necessity to operate an auto transportation company in common carriage within the State of Florida from “terminal Collins Avenue and 14th Street to Biscayne Street, thence north along Collins Avenue to State Road 140, known as Ocean Boulevard, to Hollywood Beach Hotel, thence continuing west and north along State Road 140 to terminal at Great Southern Hotel, Hollywood.” The application contained the following statement, in reference to the above route, viz.: “Between the above points passengers will be picked up and discharged on signal, except that within the limits of Miami Beach, Surfside and between Hollywood and Hollywood Beach Hotel, passengers will not he picked up and discharged.’ (Emphasis supplied.)
The following is a part of the testimony adduced at the hearing on the above application :
“By Commissioner Carter: Witness Stanley.
“Q. Your license from the City of Miami Beach, does that license permit you or prohibit you from picking up and putting off passengers inside the City? A. It prohibits me from discharging and picking up passengers.
“Q. It doesn’t prohibit you from discharging a passenger you pick up— it wouldn’t prohibit you from discharging passengers in. .Surfside? A. That is the first place you could get off, would be Surfside.
“Q. What is that? A. The first place they can get off is in the next City limits.
“Q. If you picked up a passenger at Surfside that want to go south, you could put them off in Miami Beach? A. Yes, sir, outside of the City limits. In other words, no local transportation. These licenses are all marked that way.
“Q. Well, now, if you picked up a passenger in Hollywood, you wouldn’t be allowed to put that passenger off. in Hollywood? A. No, sir, not inside the City limits.
“Q. Does that same situation apply in all of these municipalities? A. No, sir, in North Miami Beach and in Golden Beach I am allowed to pick up and discharge passengers within that territory.
“Q. Now, if you pick up a passenger in Miami Beach, can you put that passenger off in Surfside? A. Yes, sir, it is a separate municipality.
=*=****. *
■ “Commissioner Carter: Excuse me for interrupting right here. When' you speak of terminals, your permission to get from Miami Beach and Surfside and Golden Beach and these various beaches do you have the privilege as far as picking up passengers is concerned, for passengers going north of the City Limits of Miami Beach, or just the privilege of picking up passengers at the local bus stops? A. I have the privilege of picking up passengers at any street corner of Miami Beach, Surfside, Golden Beach and so forth.
“Commissioner Carter: And letting them out? A. If the picking up of the passenger at Miami Beach, I can’t let him off until I pass the City Limits.
“Commissioner Carter: You don’t have to carry them' to the terminal though? A. No," sir, I can’t disembark — I can disembark them at any corner.
“Commissioner Carter:' Does the Miami Beach Railway Line, do they stop at every corner wherever they has a passenger? A. Miami Beach Railway, ’ they stop where they please. They don’t hit Collins Avenue until they hit ' Lincoln Road.
“Commissioner Carter: How is that? A. They can pick up anywhere.
“Commissioner Carter: They are allowed to stop at any corner to pick up passengers and let them off? A. Yes, sir:
*776 “Commissioner Carter: And you will be? A. Yes, sir.
“Commissioner Carter: Is that what you propose to do, for instance, if I was down there on the corner and I made myself known to your bus driver, he would stop at any corner and pick me up? A. Yes, sir.
“Commissioner Carter: That same privilege would be accorded any citizen? A. Yes, sir.
“Commissioner Carter: And if you want to get off, you would let them off? A. Except in the City operation. In other words, if I pick up' a passenger in Miami Beach, I cannot drop that passenger off; I have to run with closed doors until he hits the City Limits of Surfside.
“Commissioner Carter: The thing I want to get clear in my mind is that you are going to render service to these citizens every ’ hour and that you would pick a passenger up at any corner? A. Yes, sir.
■ “Commissioner Carter: If they are destined beyond the City Limits? A. Yes, sir.
“Commissioner Carter: And if you come from some city north of .Miami Beach yo.u would drop him’ off at any., comer he desired? A. Yes, sir, he does not have to go to any terminal.
“Commissioner Carter:. That applies to every City all the way up and down the line? A. Yes, sir.
******
“Questions by Unidentified Person:
“Q. Now is the type of service you are rendering an entirely different type of service? A. Yes, sir. .
“Q. Than the type of service being offered by Florida Motor Lines? A. Yes, sir, I am offering'an interurban. service. I am picking up and discharging passengers enroute except where I am limited, that is Miami Beach, Surfside and Hollywood.
“Q. You do not intend to pick up any passengers in Miami Beach and put them off in Miami Beach? A. No, sir, my license with the City read that way, otherwise I would never have got the license as your company has the franchise or permit in Miami Beach, but you don’t have at Surfside.”
Following the hearing the Commission issued Order No. 1761, in which among other things, the Commission found:
“(6) There is a public need for the type of transportation service proposed within the territory affected by the application because it is a more or less specialized service, somewhat similar to a shuttle service between said cities and towns and more in the nature of an inter-urbari service than the ordinary over-the-road service rendered by such commori carriers as protestant Florida Motor Lines.
“(7) Because of the fact that there are no schools in some of the intervening municipalities between Hollywood and Miami Beach and the children of school age attend school in Miami Beach, such transportation service as is here proposed will serve a very definite need, which is distinguished from the type of service customarily rendered by common carrier over-the-road bus operators.
“(8) Public convenience and necessity require the granting of the alternative portion of said application.”
The order' further provided:
“It is further Order and Adjudged that the alternative portion of said application requesting a Certificate of Public Convenience and Necessity as a common carrier of passengers between Miami Beach and Hollywood, Florida, serving all intermediate points over State Highway 140 be, and the same is, here granted, and Certificate Number 277 shall forthwith issue to said applicant authorizing such transportation.”
In 1947, petitioner, Florida Cities Coaches, Inc. (hereafter called petitioner), acquired said Certificate No. 277 from Stann Stanley and the rights of Stanley under Order No. 1761. Later, on September 13, 1950, these rights were consolidated with *777 other rights of petitioner and'Certificate No. 277 was reissued. The reissued Certificate ■No. 277 authorized the petitioner “to transport passengers as a common carrier over routes shown in Order No. 2418 [the consolidation order of September 12, 1950] attached hereto and made a part of this Certificate.” The routes shown in Order No. 2418, so far as Miami Beach is concerned, were without change. ■
While the record is not clear on the point, it is ■ evident that for some time prior (how long does not appear in the record) to the Summer of 1952 petitioner had been operating a local bus service in Miami Beach along Road No. 140 on an hourly schedule and picking up and' discharging passengers within said, municipality.
In the Summer of 1952 Florida Railroad and Public Utilities Commission (hereafter called Commission) called a .hearing to be held in Miami Beach pn July 9, 1952, “for the purpose of determining what rights, if any, Coast Cities Coaches, Inc., has under certificates of public convenience and necessity heretofore issued by this Commission to pick — and discharge persons within the city limits of Miami Beach, Florida, and for the purpose of determining what restrictions, if any, should be imposed upon the operations of Coast Cities Coaches, Inc. within the corporate limits of said municipality.” As a result of this hearing the Commission issued its Order (Order No. 2473 dated August 17, 1952) directing petitioner to “cease and' desist rendering local transportation service within the corporate limits of Miami Beach, Florida, under Certificate No. 277.” This order was later amended by Order No. 2755, dated August 25, 1952. It is this latter order which we have before us for review. It is, inter alia, as follows:
“Pursuant to notice issued on June 26, 1952, the Florida Railroad and Public Utilities Commission held a public hearing on Wednesday, July 9, 1952, in the Municipal Auditorium, Miami Beach, Florida, for the purpose of determining what rights, if any, Coast Cities Coaches, Inc. (herein sometimes called motor carrier) has under Certificates of Public Convenience and Necessity heretofore issued by the Commission to pick up and discharge persons within the city limits of' Miami Beach, and for the purpose of determining what restrictions, if any, should be imposed upon the operations of said motor carrier within the corporate limits of said municipality.
• “By it’s Order No.. 2753 entered August 19, . 1952, the Commission found, among other things, that Coast Cities Coaches, Inc. operates into downtown Miami Beach from Hollywood, Florida under" Certificate No. 277 issued by the ■ Commission to Stan Stanley, d/b/a Stanley Transportation • Service Company, and subsequently ‘transferred to said motor - carrier; that- said Certificate No. 277 never at ■ any time authorized the holder thereof to render a local transportation service within the corporate limits of the City of Miami Beach; ’ that ■ said motor carrier has no authority under ■said Certificate No. 277’to render a local transportation ‘service within the corporate limits of Miami Beach and, predicated upon such findings, the Commission ordered that Coast Cities Coaches, Inc. forthwith and immediately cease, and. desist rendering local transportation ■ service within. the corporate limits of Miami- Beach under spid Certificate ,No. 277. .In entering said Order No. 2753, the Commission inadvertently overlooked the fact that following the transfer of said Certificate No. 277 from" Stanley Transportation Service Company as aforesaid, the operating authority under said Certificate was extended by the Commission to give Coast Cities Coaches, Inc. additional operating authority .within the corporate limits of Miami Beach. On September 12, 1950, the Commission issued its Order No. 2418 in and by which all of the operating authority of Coast Cities Coaches, Inc. '(including that under its Certificate No. 325) was consolidated under Certificate No. 277, so that after said order of consolidation said motor carrier *778 had authority .under Certificate No. 277 to engage in the transportation of passengers within the corporate limits of Miami Beach, in addition to the authority theretofore possessed by said motor carrier to operate into downtown Miami Beach from Hollywood, Florida as aforesaid.
“In issuing the aforesaid Order No. 2753, it was the intention of the Commission to require Coast Cities Coaches, Inc. to cease. and desist rendering local transportation service within the corporate limits of Miami Beach, on said motor carrier’s route acquired by transfer from • Stanley Transportation 'Service Company as aforesaid and- authorizing operations into downtown Miami Beach from Hollywood, Florida. It was through an oversight as to the breadth of the operating rights under present Certificate No. 277 that the Commission unintentionally made such order so broad as to prescribe any local transportation service by such motor carrier within the corporate limits of Miami Beach under said certificate.
“Based upon the foregoing, and after a re-examination of the certificates of public convenience and necessity issued by the Commission to Coast Cities Coaches, Inc., the Commission finds as follows:
“1. That said Order No. 2753 should be vacated and set aside and the instant order substituted therefor.
“2. .That Certificate No.- 277 was ■originally issued by. the Commission .to Stan- Stanley d/b/a Stanley Transportation Service Company and subsequently transferred to Coast Cities ‘Coaches, Inc. and thereby Coast Cities -Coaches, Inc. acquired the authority from the Commission by which it is now authorized to transport passengers over a route into downtown Miami Beach from Hollywood, Florida.
“3. That Certificate -No. 277 has •never at any time, either as originally issued or as presently composed, authorized the holder thereof to render a local transportation service within the corporate limits of Miami Beach on said route into downtown Miami Beach from Hollywood.
' “4. That Coast Cities Coaches, Inc. has no authority under said Certificate No. 288 to render a local transportation service within the corporate limits of Miami Beach on said route into downtown Miami Beach from Hollywood.
“5. That Coast Cities Coaches, Inc. is authorized under said Certificate No. 277 to pick up passengers at various points along said route referred to in Findings 2, 3; and 4 above, within the corporate limits of Miami Beach for discharge beyond said limits of Miami Beach and discharge them at any point on said route within said. city.
“Now, therefore, in consideration thereof, it is Ordered, Adjudged and Decreed by the Florida Railroad and Public Utilities Commission as follows:
“1. That the Commission’s Order No. 2753 entered herein on August 19, 1952 be and the same is hereby vacated and set aside, and that the instant order be and it is hereby substituted for said Order No. 2753.
“2. That Coast Cities Coaches, Inc. be and it is hereby ordered and directed to forthwith and immediately cease and desist rendering local transportation service within the corporate limits of Miami Beach, Florida finder Certificate No. 277 on the route of Coast Cities Coaches, Inc. into downtown Miami Beach from Hollywood, Florida, which said "route was acquired by Coast Cities Coaches, Inc. by transfer from Stanley Transportation Service Company as aforesaid.”
Two questions are presented by petitioner. These- questions are:
“First Question-: Does the authority granted by the Florida Railroad and Public Utilities-Commission under Certificate of Public Convenience and Necessity No. 277 prohibit the rendering of local transportation service within the corporate limits of Miami Beach on the -route over State Road AlA.from *779 Hollywood, Florida, into downtown Miami Beach?”
"Second Question: May the Florida Railroad and Public Utilities Commission, when interpreting operating rights originally granted to a' former certificate holder, consider matter contained in the pleadings and evidence on the original application for such rights when the present certificate holder was not a party to the original proceedings and the matters considered are not set forth in the Commission’s orders either granting the' rights initially or authorizing their ' transfer to • the present holder?”
We answer petitioner’s first question in the affirmative.- The language of Order No. 1761, on which petitioner relies, clearly indicates to us (without going back of the order) that local service in Miami Beach is prohibited. The words .“between Miami Beach and Hollywood, Florida, serving all intermediate points on State Road No. 140” indicate exactly the same thing to us (so far as purely local service is concerned) as, for instance, the words “between Jacksonville and Miami.” It would be .idle to argue that a certificate granting permission to operate a common passenger service “between Jacksonville and Miami, serving all intermediate points on U. S. Highway No. 1” would give the recipient of that certificate the right, to operate local service along U. S. Highway No. 1 in all. the cities and towns between the .two points, including Jacksonville and'Miami and yet, in determining the intention of the language used, the examples are the same. There is another, point that supports this construction. , In Order No. 2418 of September 12, 1950 .(the order consolidating ■ petitioner’s routes hereto referred to) the Miami Beach Route is referred to as “between Miami Beach and Hollywood, Florida, serving all intermediate points over State Road No. A1A (formerly State Road No. 140)” without further ado. In the same order, however, so far as the “East-West Route” is concerned (North Dade - County Haulover Beach and Miami Springs), after describing the route the paragraph concludes with the following.: “With authority to pick up and discharge passengers anywhere between the traffic circle in Miami Springs and North Dade County Haulover Beach Park.” This language was a clear indication that if local bus service was intended on any routes' set forth, express provision for that' type of service would be included in the order.'
There is yét another factor'which supports our conclusion. There is no showing by petitioner that it has ever secured from the City of Miami Beach any permit to operate a local passenger service. On the contrary, the City appears to be a principal actor in the present case. The evidence-on the original application by Stann Stanley (supra) clearly shows that • his license from Miami Beach prohibited such local service. In this connection we held in Coast Cities Coaches, Inc., v. Miami Transit Co., Fla., 41 So.2d 664, 665:
“When the appellant undertook to extend its operations in the manner we have described, it attempted to emerge from the sphere controlled by the Railroad and Public Utilities Commission and become amenable to. the provisions of the city charter and code, to which we have alluded. ■ We cannot find in the record compliance with any .of them. The city clerk testified that there had been no .public hearing before the adoption of the resolution; that no notice was sent to certificate 'holders; that the action of the city was never approved by the qualified electors; that no certificate of public convenience and necessity had ever been issued to appellant. ■ ■ . ....
“After a careful examination of the record and the briefs we arrive at the conclusion that the chancellor was eminently correct in holding that no authority had been granted the appellant which would justify its deviation from a course it had theretofore pursued under the certificate of the Railroad and Public Utilities Commission.”
If there is any doubt at all about what rights were embraced in the original Order No. 1761 and Permit No. 277 issued pursuant thereto, an examination of the original records of the Commission would have *780 dispelled all confusion. (See the evidence of Stanley, supra). Petitioner, however, says: (1) that the order was res adjudicata and that he had a right to and did rely upon it; (2) that it was not required to go back of the order to find out what was included in it; (3) that acting on the plain language of the order it had acquired valuable property rights which could not be arbitrarily taken from it.
We cannot agree with these contentions. In the first place, as we have pointed out, the original permit 'and order did not require going back of it to learn what was intended. In the second place, orders of the kind here under, consideration are not res adjudicata in the strict sense of that term when used with reference to purely judicial proceedings. In Matthews v. State, 111 Fla. 587, 149 So. 648, 649, the Court said, speaking through Mr. Justice Davis;
’‘An order of the railroad commis•sion made pursuant to chapter 14764, .Acts of 1931, while quasi judicial in character, is not res adjudicata of 'another application of exactly the same nature subsequently filed. Every pro-mitigated order of an administrative tribunal, such as is the railroad commission, may be superseded by another order. Likewise the commission has the power to modify, amd, indeed, it is 'its ditty to modify, its pre-existing orders, whe¡n new evidence is presented which warrants a change. And so it is that the commission is possessed of power, inherent from the nature of the administrative functions it is required to perform under the statute, to grant a rehearing of its decisions in appropriate cases. Tagg Brothers & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524.” (Emphasis supplied.)
State ex rel. Orscheln Brothers Truck Lines, Inc., v. Public Service Commission, 232 Mo.App. 605, 110 S.W.2d 364, 366, Involved the right of the Missouri Commission to interpret its orders. The Court in «disposing of this question, held:
“If the commission has authority to require a common carrier to do a specific thing in the transaction of its business, then it has power to order that such carrier refrain from transacting its business without authority of law.
“In the case of Speas et al. v. Kansas City et al., 329 Mo. 184, 44 S.W.2d 108, 114, the plaintiffs sought to restrain the defendants from supplying water to non-residents of the defendant city upon the theory that certain of its charter provisions were unconstitutional. The court held that the complaint was one which must in the first instance be heard and passed on by the Public Service Commission. If the commission had power to hear and pass on the complaint in that case, then it certainly had power and authority to hear and pass on the complaint in the instant case. Power to hear and pass on a complaint necessarily implies authority to grant or refuse the relief sought.
“It will not do to say that the com-, mission cannot interpret its'own orders. Denial of the power of the commission to ascribe a proper meaning to its orders would result in confusion and deprive it of power to function. In interpreting its orders it does not act judicially, but as a fact-finding agency.”
• We approve the above language and hold it to' be applicable to orders of the Florida Commission..
Petitioner’s argument that the entry of the cease and desist order deprives it of valuable franchise rights, does not find support in the record. It could have no greater rights than were given by the Commission. If petitioner has been conducting a local service over a considerable period of time before the cease and desist order, it simply had been doing that which it had no authority to do. One cannot acquire “valuable franchise rights” by an unauthorized course of conduct or action.
The petition for the writ of certiorari is denied.
ROBERTS, C. J., and TERRELL, SE-BRING, HOBSON and MATHEWS, JJ., concur.
THOMAS J., agrees to conclusion.